'GROVER C. GOETSCHIUS AND EVA I. GOETSCHIUS, PLAINTIFFS AND RESPONDENTS, v. JOHN LASICH, JOHN KRAUSS, PAUL W. WESTBROOK, WENDELL OLIVER-SON, KARMA P. OLIVERSON AND MADISON COUNTY, A BODY POLITIC AND CORPORATE, DEFENDANTS AND APPEL-LANTS.

No. 9965.
Submitted January 15, 1960. Decided June 9, 1960.
353 P. 2d 87.

Chester Lloyd Jones, Virginia City, Ralph J. Anderson, Stanley P. Sorenson, Helena, Chester Lloyd Jones and Ralph J. Anderson argued orally for appellants.

Keister & Bennett, Bozeman, Lyman H. Bennett argued orally for respondents.

THE HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, delivered the Opinion of the Court.

This is an appeal from a judgment of the fifth judicial district, in and for Madison County.

Hereafter, appellants will be referred to as defendants, and respondents as plaintiffs. Three of defendants are sued as individuals, but are county commissioners of Madison County. Two defendants are tenants on the County Farm under written lease. The other defendant is Madison County.

Plaintiffs' action, based on allegations of the flooding of their land by defendants in the operation of the Madison County Poor Farm, sought a restraining order enjoining defendants from "causing water to flow from land occupied by the defendants, and to flood the land of the plaintiffs, and from interfering with the reopening and with the use by the plaintiffs of their ditch as the same crosses land occupied by the defendants, and from interfering with the use by the plaintiffs of the land and property of the plaintiffs", and to recover $1,500 damages. The complaint contains two causes of action, but the second cause was dismissed at the trial. By such dismissal, any claim for damages caused to plaintiffs before 1956 was excluded.

Plaintiffs allege that, as a direct and proximate result of the action of the defendants in permitting water to flow over their land, plaintiffs have suffered the loss of not less than 20 tons of hay, which would have been produced from the land of the plaintiffs; the loss of large quantities of pasture; the loss of not less than 150 pounds of seed of the reasonable value of 75 cents per pound; and the loss of not less than 1,500 pounds of phosphate which had been spread by the plaintiffs upon their land, all to the damage of the plaintiffs of not less than $1,500.

There are no allegations of any gross neglect of duty, or any malicious exercise of power by defendants who are county commissioners, while acting as such commissioners.

To the complaint, the defendants filed their joint answer, by which they admitted the following allegations of the complaint: That the defendant, Madison County, is a body politic and corporate within the State of Montana; that the plaintiffs have been at all times mentioned the fee simple owners of the land described in the complaint; that the defendant, Madison County, owns the land and premises described in the complaint and referred to as the Madison County Poor Farm; that the defendants, Wendell Oliverson and Karma P. Oliverson, have an interest in the land owned by Madison County as lessees thereof; and deny that the remaining defendants have occupied the land

and premises owned by Madison County, or claim any interest therein.

As an affirmative defense to the first cause of action, defendants allege: That defendants Oliverson are in possession of the land owned by Madison County as tenants for a term of years; that the three defendants, John Lasich, John Krauss, and Paul W. Westbrook, are members of the Board of County Commissioners of Madison County, Montana, and are the executive body which conducts the affairs of Madison County; that the terrain of defendant's (Madison County) land is such that a depression exists across its property, extending across the property of the plaintiffs to the end that percolating waters, coming to the surface of the defendant's (Madison County) land, drain or flow in a northerly direction across their land, and have heretofore flowed in a continuance of such depression to, over, and across the land of the plaintiffs to the confluence of such depression with the Ruby River; that such condition existed from time immemorial, until on or about the year 1951, when the plaintiffs, a short distance from the north boundary of the land of the defendant County, constructed a dam or dike which prevented the natural drainage of such percolating waters across the land of the plaintiffs, causing the waters to accumulate upon the land of the defendant County; that thereupon the defendant County constructed a drainage ditch on its own land, along the north boundary to the east boundary line of its said land, to the confluence of said drainage ditch with the Ruby River; that thereafter, the plaintiffs changed the course of the Ruby River across their land, and constructed across the old river bed a solid dike below and above the point of confluence of said drainage ditch with the Ruby River; that as a result of these activities there is no place for the natural drainage of percolating waters accumulating on the land of the defendant County, except to spread out on the land of the plaintiff; that any flooding of the land which has occurred in the years 1955 and 1956 has been solely caused by

the wrongful acts and conduct of the plaintiffs in obstructing the natural flow of percolating waters which come to the surface and arise on the land of the defendant County; that the plaintiffs are estopped to claim or assert damages against any or all of the defendants herein by reason of such wrongful acts.

A second affirmative defense is that plaintiff, Grover C. Goetschius, filed with Madison County, Montana, a claim for damages to crops on five acres of land flooded by waste waters from the land of Madison County, adjacent to land of plaintiff, and also a claim for $1,000 for the destruction of five acres of land of claimant and diminution of the value of the remainder of the land of plaintiff caused by the flooding aforesaid, or for a total claim of $1,500; that such claim filed on July 3, 1956, was thereafter disallowed, and the plaintiff filed a notice of appeal to the district court from the disallowance of said claim; that said appeal is now pending before the court; that said claim includes damages for the same damages mentioned in plaintiffs' complaint, and that there is another action pending between the same parties for the same cause.

Because we cannot say as a matter of law, that the issues raised by such defense are identical with the issues presented in this action, or that the parties to be bound thereby are the same, we have not considered the specification of error covering disallowance of this defense.

Plaintiffs' reply admits that defendant County constructed a drainage ditch leading across the land of the County, and onto the land of the plaintiffs, and allege that said drainage ditch was constructed without any right whatever. All other matters set forth in the answer are denied.

The presiding judge made findings of fact and conclusions of law generally in favor of the plaintiffs and against the defendants, specifically finding that the defendants "at all times herein mentioned" had occupied the land popularly know as the Madison County Poor Farm; that defendants Lasich and Krauss were qualified county commissioners from January

1951 to the time of trial; and that the defendant Westbrook was a duly elected and qualified commissioner from January 1955 to the time of trial; that during the years 1955 and 1956, the defendants Wendell Oliverson and Karma Oliverson were tenants of the defendant County on the land referred to as the Poor Farm; *that, during the year 1950,* the defendant County, *through its county commissioners,* plowed up two certain ditches on the land of the said County, which had been used by the plaintiffs for many years, for irrigation of about five acres of the land of the plaintiffs; that at all times since the said ditches were plowed up, the defendant County and its commissioners prevented the plaintiffs from restoring the said ditches; that on or about the year *1950,* the defendant County, acting by and through its county commissioners, caused to be constructed a certain drainage system on its land, and did wrongfully cause a high soil bank to be placed on the south side of such drainage ditch, notwithstanding the fact that there was sufficient room on the land of the defendant to place the soil bank or the north side of the drainage ditch; that such act resulted in high water flowing against the soil bank and then back onto plaintiffs' land, whereas if the soil bank had been placed on the north side of the drainage ditch, when such water drainage washed back up it would remain on the land of the defendant County; that ever since the construction of the drainage ditch by the defendant County, its county commissioners, and its tenants have caused drainage water to flow upon the land of the defendant onto about five acres of the land of the plaintiffs; that if the defendant County had run the drainage ditch built by it from its eastern terminus until the same reached the Ruby River, as the river crosses the land of the defendant County, or had constructed a drainage ditch from a low area at about the center of the land of defendant in a northeasterly direction across defendants' land to the Ruby River, there would have been no flooding of the land of the plaintiffs by drainage waters from the land of the defendant County; *that at all times mentioned*

*there was a ditch on the land of the defendant on the south boundary of said land to a point where a spillway was constructed running into the Ruby River, and that it would have been entirely feasible to have kept the ditch clean, and in the event it had been kept clean and said spillway kept open, there would have been no waste water flowing from land other than land of the defendant County;* that notwithstanding the fact that there were several feasible solutions available to defendant County, as a means of disposing of waste water from its land, the defendant and its commissioners and tenants entirely *failed to utilize any of said feasible solutions,* but continued to cause waters to flow over the land of defendant County and onto the five acres of the land of the plaintiffs; that as a *direct and proximate result of the cutting of said ditches and of the construction of said drainage system,* the plaintiffs have been damaged in the sum of $550, "in that the work necessary to be done to correct the conditions upon the land of the plaintiffs caused thereby will reasonably cost the said sum of $550, and that, during the year 1956, as a direct and proximate result of said activities of the defendants hereinabove mentioned, plaintiffs have suffered crop damage in the sum of $395.55; *that the defendant, Madison County, was performing a governmental function, in operating and maintaining a county poor farm.*"

As conclusions of law, the court found the plaintiffs were entitled to a judgment perpetually enjoining all of the defendants from causing water to flow from the land of the defendant County, and to flood the land of the plaintiffs, and from interfering with use by the plaintiffs of the land and property of the plaintiffs; that the plaintiffs were not entitled to a money judgment against the defendant County; that the plaintiffs were entitled to recover judgment against the defendant County Commissioners and Wendell Oliverson and Karma Oliverson in the sum of $945.50, together with costs. Judgment was entered in accordance with the findings.

Under the pleadings, the burden was on the plaintiffs to establish their cause of action, as to each defendant to be bound by a judgment, by a preponderance of the evidence. To sustain this burden, plaintiffs offered the testimony of Grover C. Goetschius, one of the plaintiffs, a former tenant of plaintiffs' lands, and a former employee of the plaintiffs. ·Without going into the testimony generally of these witnesses, it may be stated as a fact that not a single witness testified to any fact which directly or indirectly involved the defendant County Commissioners in the doing of any act complained of in the complaint, or which damaged the plaintiffs, which are covered by the pleadings or present an issue in this case. The three are named defendants in their individual capacity. The answer alleges that they are county commissioners of Madison County.

Commissioner Lasich testified the commissioners then in office ordered the drainage ditch constructed to take care of the water. Under the statute, section 71-118, R.C.M. 1947, the Commissioners had the duty to keep the poor farm in repair. The drain was wholly constructed on county land. No allegation of negligence or breach of statutory duty is pleaded in plaintiffs' complaint. The evidence offered in the case does no more than to establish that the water, accruing from the use of irrigation water used on defendant County land, flowed over and onto some five acres of land of the defendant and caused a loss of crop during the year 1956. No evidence as to loss in any other year was offered.

The proof offered by Mr. Goetschius goes no further than to establish that when there was irrigation on the Madison County Poor Farm, there was water that went over to the plaintiffs' land.

The tenant, defendant Oliverson, as shown by the lease received in evidence, was in charge of the farm and irrigation during the year 1956.

The following excerpts from the testimony will illustrate the true situation:

"Q. Mr. Goetschius, during 1956 did you have any similar troubles with the water flowing from the County place onto your place? A. Yes.

"Q. Do you recall the time when the County shut off its water to put up the hay last year? A. I do.

"Q. What happened then? A. All of that ground in there, theirs and mine, both dried up. There was no water on it.

"Q. And did you make any observations last year as to how long the County did or did not just leave water flowing out there onto that land? A. I did.

"Q. What have you to say as to whether they took care of their water, or just let it flow? A. A greater part of the time they just let it flow, let it go unchanged and wasn't taken care of. * * *

"Q. Tell the Court whether or not at any time when the County has not been irrigating on that County place, when the County or their tenants have not been irrigating on that County place, you have had any trouble with flood waters. A. None.

"Q. Now previous to the time that the County turned water onto that place, that is the County or the County's tenants turned water on that County place this year, did you have any water flowing on down onto your place? A. No. * * *

"Q. Now tell the court if you know what kind of care has been given to the irrigation on the County place during 1956, and so far this year. A. It has been very poor.

"Q. Well, in what respect? A. Well, the water hasn't been taken care of, it has been let run for days and days at a time without taking care of or changing it. There was one time last year in particular that I noticed a certain piece of ground where the water run for 22 days in one place without being changed and other times it has run several days without being changed."

Presumably, the tenant was in charge of the irrigation. No one else was identified as having done the work.

The plaintiff, Grover C. Goetschius, testified that the drainage ditch, built by the defendant County, could have been extended by the County on its own land to the Ruby River, but that it was never extended to the river at any point when it was built. In view of the testimony of defendant County's witnesses that the drainage ditch had been built so that it ended in a small depression, some 20 feet from the Ruby River, which allowed water to go directly into the river, and that the water in the drainage ditch would flow directly into the river from the end of the ditch at the time it was constructed, and the further fact that the defendants testified that plaintiffs stopped the natural flow of the water into the river by the changing of the course of the river on their own land, it is interesting to note the testimony of Mr. Goetschius on this point. Thus the transcript shows these questions and answers, as the same are directed to Mr. Goetschius by his counsel:

"Q. Now when if at all did you make any change in the course of the river as it crosses your land? A. I started in 1949.

"Q. And when was this drain ditch, right next to the boundary between you and the County, constructed by the County? A. I think it was '51.

"Q. 1951. Now could the drain ditch have been constructed by the County on its own land to the river so as to dump its waters into the river? A. Yes."

If the statements of plaintiff Goetschius be true, then the County drainage ditch as constructed would serve no purpose other than to act as a catch basin for accumulating water. Since there is no testimony on the part of the plaintiffs, other than that of Mr. Goetschius that he began to make the change in 1949, it would seem logical that the County, having gone to the expense of having constructed a ditch to take care of waste water, would hardly stop it within 20 feet of the river, unless

at that point the waste water, by following the natural elevation of the land, would empty into the river. These facts give strong support to the inference that the drainage ditch, as put in, carried water directly into the river, and that the dike was constructed so as to change the course of the river, and preclude the use of such ditch to carry water into the river, after it had been constructed. Several witnesses supported this claim. The trial court apparently found to the contrary, but on the face of the cold record, it would seem that the great preponderance of the evidence is against such finding.

The witness Lasich testified that he begged Goetschius to put in a culvert in the dike to drain water into the river; that the County had supplied him with a culvert, and offered to clean out another drain for a crossing to his land, but that he refused to permit the culvert to be installed or to let the commissioners go in and get the culvert they had previously furnished him. Plaintiff admitted that the culvert is still held by him.

The court made an award for flood damage to the land in the sum of $395.55. Plaintiffs' testimony with respect to such damage is very weak. He does not testify with particularity, but only that the cost was about a certain amount. His first item of expense, for breaking and cultivating the land in 1956, was stated to be ''around $12.50 an acre'', which on five acres would give this particular item of damage as the sum of $62.50. He stated he ''believed'' the cost for seed was $14.90, and that he put phosphate on the ground at a cost of $7.36 per acre, or a total of $76.80 on these items. Of necessity, the plowing, fertilizer and seed were all necessary to be furnished in order to produce a crop. There is no testimony that it was made necessary by any act of defendants. They total $114.20. Plaintiff then testified that his land, prior to flooding would produce two tons of hay to an acre, worth $22 per ton, or a total of $220.00; that he normally would pasture about $25 worth, but

actual pasture was very little, worth ''about $1.00''. This gives him a crop loss, according to his figures of $244.

No calculation was made of the expense of harvesting or marketing the crop, which should have been figured in showing net loss. In estimating his damages, he included $114.20 for that which was necessary to be done in order to raise a crop, and the actual damages he could recover, would be $244, if no consideration be given cost of marketing, or harvesting crop. The court gave him a judgment for $395.55 on account of loss of crop against all defendants.

On the face of the record, it would appear that if the plaintiffs should have grossed $244 from their crop, with necessary preparation, and had an expense in producing the crop of $114.20, their net loss would be $129.80. We know of no rule of law which would justify the allowances which were made in this case.

The court made an award of $550 for the cutting of ditches which had to be replaced. It is true, that the construction of the drainage ditch eliminated the use of the ditches, but the proof shows that these ditches were constructed on the land of the defendant County, and that their use was only permissive. It was based on this fact, that the second cause of action of plaintiffs' complaint was dismissed during the trial. No right to the use of the ditches across the land of the defendant County was shown to exist in the plaintiffs, either by right of prescription or otherwise, and the award of damages for such an item was erroneous.

Again on damages, Goetschius testified that it was necessary to put in a new system to get water from his water course onto his land. This was because the ditches had been cut into and destroyed. He was asked what it would cost to complete the system and he answered, ''About $400.'' He stated that he had another ditch which was known ''as their drain ditch'' that had been washed and blasted out. That was prior to this.

"Q. What will it cost to restore that land? A. This drain ditch.

"Q. Where that blasted hole was that was left? A. $150."

Plaintiff admitted that he built a dike on the west end of this east and west drain ditch, and that it was right on the west end of same. He stated that he needed the dike to run water across the top because "they plowed those ditches in and filled them up for me until I had no more use for them, and at the time they did that I had to come down here on this other end of the north end on the county field where that is marked 'dike' and put up a dike there to run my water from this field west of it across there. I had to put that dike up there for elevation."

It is noted that he put the dike in to get water which formerly came from ditches across the county land which were used permissively for two or three years and then plowed in by the county. Since no showing of right to use such ditches was made by plaintiffs, there is no basis for allowance of damages for putting in a dike to provide a new way of carrying water to his land.

In any event, such damage could not be assessed against the defendants Oliverson, whose only contribution to plaintiffs' damage, if any, was their failure to properly care for their waste water in 1956.

 If the actions of the defendant County Commissioners could be in anywise directly connected with the condition of which the plaintiffs complain, such defendants were unquestionably engaged in the performance of their official duty as County Commissioners of the defendant County. The rule affecting public officers is succinctly set forth in 43 Am.Jur., Public Officers, § 279, p. 92, as follows:

"As is elsewhere mentioned in this article, officers performing discretionary duties, may become personally liable for negligent acts in excess of their authority. But no action lies for the negligent performance of an official duty, which is judicial or

discretionary in its nature, however gross or corrupt such neglect may be, so long as the acts are wholly within the officer's jurisdiction. The remedy in such cases is by indictment or impeachment. There is, however, authority to the effect that officers exercising discretionary powers may be held liable for a willful and malicious exercise of the power vested in them, or a gross neglect of duty.''

In this case, there is no evidence, nor any finding, that would bring defendant Commissioners within the exception noted.

The court found the ditch was constructed on or about the year 1950; that Lasich was a Commissioner ''from 1950 to the time of trial''; and that Krauss was Commissioner from January 1951 to date of trial. None of the other defendants were either Commissioners or tenants on the land in question at the time the ditch was built. It is also to be noted, that the court found as a fact that defendant County was performing a governmental function in operating and maintaining the farm in question, and as a conclusion of law that the plaintiffs were not entitled to a money judgment against the defendant County.

As before indicated, there is nothing in the testimony at any point which shows that any of the defendant Commissioners individually caused any water to flow over the land of the plaintiffs, all as indicated by the portions of the testimony heretofore set out. If we accept the testimony of plaintiffs, the sole cause of the water flowing over and onto plaintiffs' land was the failure on the part of the tenant to take proper care of his waste water or to so handle the waste water as to avoid the same flowing over onto plaintiffs' land. This land was being farmed under a lease to the defendants Oliverson. Under their lease, which was received in evidence, they were obligated to follow good farming practices.

Plaintiffs sued defendants, Lasich, Krauss, and Westbrook as individuals. If these defendants can be liable under any theory, it would be solely on the ground that they are members of the Board of County Commissioners.

■ The trial court found, and properly so under existing statutes and applicable law, that the County acted in its governmental capacity in the operation of the County Poor Farm and there was no liability on the part of the County.

In view of the court's findings, it is difficult to determine from the record what was the basis for a personal judgment against the individual Commissioners. While the court found all defendants caused the flooding of plaintiffs' land, the record does not sustain this finding. There is no statutory authority for finding liability of defendants, sued as individuals, simply because they are county commissioners and without more.

■ Respondents cite section 16-1161, R.C.M. 1947, as authority for the position that the commissioners can be held in their individual capacity. This section merely provides that any county commissioner who neglects or refuses to perform any duty imposed on him, without just cause therefor, or who willfully violates any law provided for his government, as such officer, or fraudulently or corruptly performs any duty imposed on him, or willfully, fraudulently or corruptly attempts to perform an act, *as commissioner,* unauthorized by law, is liable on his official bond to any person injured thereby for all damages sustained.

Respondents also cite Becker v. Chapple, 72 Mont. 199, 232 P. 538. This case applies to failure of the county commissioners to perform a specific duty required by statute, and failure to perform such duty after notice of the fact such duty was not performed. Specifically, in that case, the county commissioners, while in charge of county roads, failed to barricade a washed-out bridge opening after knowledge of the existing conditions.

The complaint in this case is not based on any failure of the individual County Commissioners to perform some duty imposed by statute. It does not charge negligence or neglect of duty. The charge made in paragraph 5 of the complaint is that ''the defendants above-named did cause large and excessive quantities of water to flow upon, over and across the said lands occupied

by the defendants and did willfully, wrongfully, maliciously and unlawfully cause large and excessive quantities of water placed by the defendants upon the lands occupied by the defendants as aforesaid to flow from the said lands occupied by the defendants and on to the real property of the plaintiffs above described'' causing damage to plaintiffs' land. There follow allegations ordinarily contained in injunction actions to the general effect pecuniary compensation would not afford adequate relief and that it would be difficult to ascertain in amount. The prayer asks an injunction against flooding and general damages against all defendants.

Considering the testimony of the plaintiffs as to the cause of the damage complained of, and in view of the fact that the land was operated under lease to the defendants Oliverson, it would seem clear that the only persons who would be responsible to the plaintiff, under the pleading and proof, are the tenants of the county land. According to plaintiff, and referring to the sworn testimony of Goetschius, there was no water on his land except at the time of irrigation on the county land. It was only when the water was negligently used, that their land was flooded. There is no intimation that anybody but the lessees had charge of the irrigation. The rule respecting the rights of landlord and tenant is set forth in 32 Am.Jur., Landlord and Tenant, § 761, pp. 648, 649, as follows:

''The relation of landlord and tenant, in the absence of stipulations to the contrary, imposes upon the tenant certain duties in connection with the use of the property, but, in itself, involves no idea of representation or agency such as will render the landlord responsible to third persons for the torts of the tenants with respect to the use of the demised property. Nor does the mere receipt of rent by the landlord from the tenant impose responsibility in tort upon the landlord for which he is not otherwise responsible. Generally it may be said that while the landlord is liable for injuries resulting from the condition of the premises at the time of the execution of the lease and from

nuisances existing thereon at that time, *it is the tenant who is liable for the negligent use of the premises* and for defective conditions arising subsequent to the letting of the premises, while they are in his control and possession. The liability of the landlord is, as a general rule, suspended as soon as he surrenders possession and control of the premises to the lessee. * * * The landlord is not liable for injuries occasioned by a misuse by the lessee of the premises or of appliances which were thereon at the time of the lease, where the premises or the appliances are capable of a reasonable ordinary use which would involve no injury to third persons, or for damages caused by any other positive acts of the tenant which were not necessary to the enjoyment of the premises and were not directed by the landlord. *Nor is he liable for injuries to adjoining property due to a nuisance created by the tenant during the term,* or for injury to the adjoining property by the wrongful act of his tenant in keeping the rented premises in a dangerous or unhealthy condition, or for the manner in which the tenant carries on any business on the leased premises during his term.'' Emphasis supplied.

█ The court found that the County constructed the drainage ditch in question in 1950. If it be the position of the plaintiffs, that the condition existing on their land is caused by the construction of the ditch, and not by the excessive irrigation, then the action against the defendants Oliverson, as the tenants in possession of the place, is clearly erroneous, because they were not tenants, nor are they shown to have had anything to do with the construction of the ditch.

If the findings of the court be correct, the two Commissioners are likewise absolved of blame, because they would not be liable for construction of a ditch in 1950, when they did not take office until 1951. The general rule is that a lessee does not merely by accepting a lease and assuming the relation of tenant, become liable for injuries occasioned during the term of his lease as a result of the nuisance or dangerous condition existing on the

demised premises at the time of the execution of the lease. The general rule is that a landlord is liable for negligent construction, and a tenant for negligent use of premises.

The rule is stated in 32 Am.Jur., Landlord and Tenant, § 822, p. 699, as follows:

"While, generally speaking, the tenant of premises is responsible for injuries to third persons occasioned by the condition of the premises, a lessee does not, merely by accepting a lease and assuming the relation of tenant, become liable for injuries occasioned during the term of his lease as a result of a nuisance or dangerous condition existing on the demised premises at the time of the execution of the lease. The landlord is ordinarily liable for injuries to persons outside the demised premises incurred during the term of a lease as a result of a dangerous condition or nuisance existing on the demised premises at the time of the demise. *The general rule is that a landlord is liable for negligent construction, and a tenant for negligent use, of premises.* A tenant may be held liable also, but only when it can be shown that he had notice of the existence of a dangerous condition or nuisance, or that time enough had elapsed in which he could by the exercise of proper care have obtained such knowledge. According to the rule in some jurisdictions, he is liable only after a request to abate the nuisance. There are decisions to the effect that in such cases if the lessee does nothing but maintain the premises in the condition in which he receives them, one who suffers from the nuisance must look to the landlord, and not the tenant for redress.

"According to the general rule, the tenant is also liable if he continues such nuisance after notice to abate it, on the theory that by suffering it to remain, he is, in effect, keeping up and maintaining it just as if he originally had caused it to exist. It has been held that a provision in a lease that no alterations or additions shall be made by the lessee does not exempt the lessee from a liability for an injury occasioned by such defect."

It should be noted that there is nothing in the evidence showing, or from which it could be inferred, that the defendants Oliverson had any notice of the damage being done to the plaintiffs, or that plaintiffs made any request to defendants Oliverson to remedy the situation that existed. Likewise, there is no pleading that raised that issue.

We do not mean to imply that plaintiffs are not entitled to an injunction restraining the flooding of their land, upon making a proper showing, and if the evidence does not show their own acts are the cause of such. We do hold that neither the pleading nor the proof justifies a personal judgment for damages against the three defendant Commissioners, and that in the absence of clarification of the trial court's findings, it cannot be determined whether it found the cause of the flooding was negligent methods of irrigation and improperly taking care of waste water, or was caused by the construction of the drain ditch on county land. In one case, defendants Oliverson might be liable and not in the other. The same rule applies to Madison County, insofar as the right to enjoin it is concerned.

The judgment of the lower court is reversed as to the defendants, Lasich, Krauss and Westbrook, and the action against them is dismissed. As to the defendants Oliverson, and Madison County, the judgment is reversed and a new trial ordered.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR, ANGSTMAN and CASTLES, concur.