No. 13495

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

AGRILEASE, INC.,

Plaintiff and Appellant,

-vs-

THELMA GRAY,

Defendant and Respondent.

----------------------------------------------------

THELMA GRAY,

Third Party Plaintiff and Respondent,

-vs-

AGRILEASE, INC.,

Third Party Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Hutton, Sheehy and Cromley, Billings, Montana
John C. Sheehy argued, Billings, Montana

For Respondent:

David DePuy argued, Livingston, Montana

---

Submitted: May 23, 1977

Decided: JUL 12 1977

Filed: JUL 12 1977

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal from the district court, Park County, arises from a judgment where two causes of action were consolidated for trial and tried by a jury. Agrilease, Inc. is plaintiff in one action and third party defendant in the other. Thelma Gray is defendant in one action and third party plaintiff in the other. Agrilease appeals in both cases.

In February 1974, Thelma Gray, a rancher along the Yellowstone River, south of Livingston, Montana, contracted with Agrilease, Inc. of Billings, Montana, for a pumping and irrigation system designed to take water from the Yellowstone River and to raise it over 100 feet to undeveloped land for the purpose of raising alfalfa. The original contract was for $34,235.00. Thereafter changes requiring extra work and material ultimately raised the total cost to $42,559.29. Gray made two payments on the contract--$15,000 on February 26, 1974; and $7,500 on May 31, 1974. No other payments were made.

Thelma Gray owned water rights of approximately 1,000 miner's inches out of the Yellowstone River. The plan was for a pumping system that would take 500 inches of water out of the river to be used to irrigate previously undeveloped land. Mr. Bick, acting for Agrilease, placed a purchase order with Worthington Vertical Pump Corporation on February 21, 1974, for a pump that would pump and raise some 4,000 gallons per minute to the lands to be irrigated. He requested shipment by May 21, but the company in its acknowledgement of the order gave September 13 as the delivery date for the pump. The pump did not arrive until late October when it was installed. Gray testified and was supported by witnesses who worked on the ranch, that Bick assured her he would have the system installed

and working before June 1, 1974. Bick denies this and testified he did everything he could to get the pump by June 1, but due to the Arabian oil crisis of 1973 industrial goods were hard to get, went up in price, and he had problems of supply, shipment and delivery.

The testimony clearly shows Gray indicated to Bick she planned to break up and plant some 85 acres of previously undeveloped land to raise alfalfa. In fact, that was the reason for the project and Bick to get the contract surveyed the land for ditches and leveling. He was aware the land was plowed, planted and harvested. Due to the failure of the pump to arrive on time for the 1974 hay crop, the harvest was a disaster. The crop burned up in May and June and only 70 tons were realized, when 155 to 160 tons were anticipated if irrigation had been available. Even the 70 tons would not have been possible, except Bick furnished a small pump to get some water to the acreage. He testified it cost him more than $5,000 to do this to assist Gray. In addition Gray testified she lost pasture in 1974, due to the failure of the pump to arrive and she had to purchase hay that year.

To establish the pumping system Bick had to build a retaining wall near the river and to provide inlets from the lower part of the wall into two sumps or wet walls into which the Worthington pump was to be inserted to remove water from the river and out into the pipeline and then into the ditches. Approximately 2,200 feet of 12 inch pipeline was to be used.

Although the contract was signed in February and orders were placed for the pump and the pipe in February, Bick did not start construction of the retaining walls until early May. This proved to be a bit late for as usual in the spring the river rises rapidly and in 1974 there was an unusually heavy run-off.

-3-

Bick testified he built a dike five times, the water coming over each time, to get retaining wall footings and foundations established.

The steel pipe arrived in late April, the motor to drive the pump came in May, the sump installation was finished in late August, all too late to be of much help to the 1974 crop.

The pump arrived and was installed and was attached to the pipe already in place in October. Bick tested the operation of the pumping system in the presence of Mrs. Gray and her employees and no problems were found with the system at that time.

The contract called for a final payment upon the completion of the installation of the system and it being put into operation. It was completed in late October but Gray made no payment then or after that date, although she admits it was due. Statements were sent monthly thereafter and no protests were heard from Gray. To protect itself Agrilease, Inc. filed a mechanic's lien against Mrs. Gray's ranch in the amount of $20,059.29.

In May 1975, Bick was called to the ranch to start the system working. After starting up it seemed to work, so he shut it off and then started it up when a "Murphy switch", a safety device broke and had to be removed and taken to Billings. This was not replaced until June 15, 1975. Thereafter, early in July a vibration developed and on August 7 or 8, Bick removed the pump from its well and found the strainer surrounding the suction end of the pump had collapsed, and a rock had entered and lodged in the impeller. Bick agreed to take the pump to his shop in Billings but asked Gray to pay off the balance of the contract, or at least $10,000. She agreed but did not pay, so Bick refused to go ahead with the repairs. He took the pump and its motor and held them in his shop.

As a result Gray alleged a loss of the 1975 hay crop.

Bick alleged the system would have worked without the "Murphy switch", but that made little difference to the finding of the jury. The issue of negligence in not screening the inlets to the sump pump was submitted to/the jury and it found against Bick.

A judgment awarded Agrilease, Inc. damages against Mrs. Gray in an amount of $20,059.29; and an award for Mrs. Gray against Agrilease in the sum of $22,397 or a net amount to Mrs. Gray of $2,337.71.

Appellant Agrilease, Inc. raises several issues on appeal:

1. Did the court err in amending the verdict form, over objection, and submitting to the jury after instructions were settled, an issue of damages to the pump, when such damages were not plead, were not based on evidence and were not covered by jury instructions?

2. Did the court err in submitting to the jury, over objections, the issue of damages for the loss of the hay crop for the year 1974, where the only evidence of the market value of the hay crop was based on gross market value, without deducting the cost of production and marketing such crop?

3. Is Agrilease Inc. entitled to interest on the unpaid balance of the contract as a matter of law?

4. Did the court err in allowing the jury to consider an offset to the Agrilease claim for the payment of the Linville [subcontractor under Agrilease] lien in excess of $2,139.36?

Issue 1. This issue concerns amendment of the verdict form after all instructions had been settled. The posture of the case was that both sides had rested, the instructions were settled, and Agrilease, Inc. had offered a verdict form for submission to the jury. At that point counsel for Gray moved the court to amend the verdict form, so the jury could make

specific findings on several additional issues.  One amendment
allowed permitted the jury to award a sum for damages to the
pump and the jury awarded $4,799 damages.  At the time the trial
judge allowed the amendment he noted:  "There was no proof in
there at all as to what it would cost to repair it."

We agree and find the court erred in allowing this
amendment.  Here, the complaint set forth seven counts; none
covered the cost of repair to the pump or the damages to the
pump.  No effort was made to prove the cost of repair or that
the pump or the system sustained any loss in market value by
virtue of the damaged pump.  The sole evidence as to the value
of the pump appears from Agrilease's exhibit, the purchase order,
indicating a cost of $4,000.  There was nothing in the record
for the jury to base a market value on, due to the damage to
the pump or the cost of repair.  No instructions were given on
the cost to repair the pump, nothing supports the $4,747 figure.

Gray argues there was evidence the pump cost $4,000;
that it was badly damaged and the cost to repair it would be at
least $4,000.  Gray cites as authority to amend a verdict form
the case of Smith v. Jacobsen, 224 Or. 627, 356 P.2d 421.  Neither
this case nor cases later citing it as authority for amending
pleadings allowed an amendment at this stage of the case.
Dorr v. Janssen, 233 Or. 505, 378 P.2d 999; Beard v. Beard,
232 Or. 552, 376 P.2d 404, 406; Eck v. Market Basket, 264 Or. 400,
505 P.2d 1156.  In Beard the Oregon Court noted:

> "* * * amendment is allowed with reasonable
> liberality, particularly where the matter
> covered by the amendment is sufficiently
> brought to the notice of the adversary in the
> original pleading and during the trial so that
> he can be prepared to meet the issue." 376 P.2d 406.

That is not the case before us.  Here, Gray did not move to amend
her pleadings to conform to the evidence, rather she moved to

amend the verdict form to include an issue relating to damages to the motor caused by negligence. The holding of this Court in Lovely v. Burroughs Corp., 165 Mont. 209, 217, 527 P.2d 557, controls:

> "Damages may properly be awarded when they serve to compensate the plaintiff for detriment proximately caused by the defendant. Section 17-301, R.C.M. 1947. Before an award can be made, the damages must be clearly ascertainable in both their nature and origin. Section 17-302, R.C.M. 1947. Damages which are a matter of mere speculation cannot be the basis of recovery. [citing cases]" 165 Mont. 217.

Gray's reliance on Bos v. Dolajak, 167 Mont. 1, 534 P.2d 1258, does not bear fruit. There the damages were certain and capable of determination. Here, they are not. To recover the party seeking damages for loss of personal property must show its value before and after or the cost of repair. Bos v. Dolajak, supra; Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918.

Issue 2. This issue concerns alleged error by the trial court on damages for loss of the 1974 hay crop.

Agrilease alleges evidence of the market value of the hay was based on the gross market value, without deducting the cost of production and marketing.

Here, the jury awarded $13,585 for the loss of the hay crop and for use of pasture occasioned by Agrilease's failure to get water to the crop. No value was assessed to the 1974 hay crop loss in the verdict. While Gray claimed damages for a loss of 155 tons, valued at $43 per ton, she did recover about 70 tons from the first cutting, but there was no evidence in the record on the cost of plowing, weeding, or harvesting that crop.

The court instructed as to damages:

> "You are instructed that the measure of damages for the loss of crops and forage is the market value less costs of growing the

crops and forages if sold by the grower, however, if the grower of the crops or forage uses the crops and forage lost for other feed for the grower's livestock then the measure of damages is the market value of the crops and forage lost."

This instruction was improper and caused error due to the fact it gave no consideration to the cost factors. We find no authority for that portion of the instruction relating to where the crops are used to feed the grower's cattle, the production costs are to be deducted.

While Gray testified she had to purchase hay to replace her 1974 crop loss, she did not testify how much was purchased or at what price.

Gray relies on this Court's holding in Eablonski v. Close, 70 Mont. 292, 225 P. 129. That case is not in point for there testimony was permitted, because there was not an established or known market value for timothy hay. Here, the market value was established by Gray and other witnesses.

In a later case involving the loss of a hay crop, Goetschius v. Lasich, 137 Mont. 465, 476, 353 P.2d 87, the Court established this rule for ascertaining damages:

"No calculation was made of the expense of harvesting or marketing the crop, which should have been figured in showing net loss. In estimating his damages, he included $114.20 for that which was necessary to be done in order to raise a crop, and the actual damages he could recover, would be $244, if no consideration be given cost of marketing, or harvesting crop. The court gave him a judgment for $395.55 on account of loss of crop against all defendants.

"On the face of the record, it would appear that if the plaintiffs should have grossed $244 from their crop, with necessary preparation, and had an expense in producing the crop of $114.20, their net loss would be $129.80. We know of no rule of law which would justify the allowances which were made in this case." 137 Mont. 476.

This case follows the long established rule of law in this state that only the net value, not the gross value of lost crops can be recovered. Carron v. Wood, 10 Mont. 500, 26 P. 388; Hopkins v. Butte & Montana Commercial Co., 16 Mont. 356, 40 P. 865; Rass v. Sharp, 46 Mont. 474, 128 P. 594.

Issue 3. This issue is directed to whether or not Agrilease is entitled to interest on the unpaid balance of the contract.

Section 17-204, R.C.M. 1947, provides as to contract claims, that every person who is entitled to recover damages certain, or capable of being certain by calculation, and the right to recover which is vested in him on a day certain is also entitled to recover interest thereon from that day.

Respondent Gray argues that Agrilease, Inc. claimed items to which it was not entitled, so the account between them was not "certain by calculation", therefore no interest. In support respondent cites Daly v. Swift & Co., 90 Mont. 52, 300 P. 265; School Dist. No. 1. v. Globe & Republic Ins. Co., 146 Mont. 208, 404 P.2d 889. We find these cases not applicable to the fact situation in the instant case. In effect, what respondent argues is that the recovery of interest on a liquidated claim can be defeated by a counterclaim for an unliquidated amount. We do not agree, nor do we find authority in support of respondent's argument.

The contract in the instant case provided for the final payment on the day the system was placed in operation. That date came in late October 1974, and Gray received monthly statements thereafter by certified mail. At trial the jury returned a verdict in the exact amount of those monthly statements $20,059.29, but failed to consider interest due to an error by the trial court in failing to approve an instruction on an account stated.

Several California cases properly construe section 17-204, R.C.M. 1947, as it was taken from the California Code, Section 3287. The most recent California case Tripp v. Swoap, 131 Cal. Rptr. 789, 552 P.2d 749, 757, sets out the factors necessary to satisfy Section 3287:

> "Under Section 3287, subdivision (a) as interpreted in Mass, supra, a claimant must satisfy three conditions for the recovery of interest in a mandamus action against a state: (1) There must be an underlying monetary obligation; (2) the recovery must be certain or capable of being made certain by calculation; and (3) the right to recover must vest on a particular day."
> 552 P.2d 757.

See also: Hansen v. Covell, 218 Cal. 622, 24 P.2d 772; Lineman v. Schmid, 32 C.2d 204, 195 P.2d 408; Anno. 60 ALR3d 487, 512.

Here Agrilease fulfilled the three conditions set forth in Tripp to recover interest. Its right to payment accrued as of October 1974, and the payment was for an amount certain. All that happened thereafter in the summer of 1975 to the "Murphy switch" and to the pump does not affect the final contract payment date. As for the items that might reduce that sum, the unused pipe, the use of Gray's tractor, etc., are all easily ascertainable and can be made certain at any time. On retrial Agrilease is entitled to interest as a matter of law.

Issue 4. This issue is directed at the court's error in allowing the jury to consider the offset to the Agrilease claim for the payment of the Linville lien in excess of $2,139.49.

Linville was the subcontractor who filed a lien on Gray's property for payment of its account for electrical services perfomed on the pump and the irrigation system. The action to foreclose the lien was settled just prior to trial. If Gray had paid Agrilease the balance of the contract when that account was due, the mechanic's lien by Linville would not have been filed, for Linville would then have been paid by Agrilease, Inc. The trial court allowed the jury to award, by its

instruction, Gray the sum of $2,481. This amounted to a payment of interest to Linville and its attorney fees. This award was improper and should not be considered at retrial.

The judgment of the trial court is reversed and the case is remanded for new trial, unless in the alternative, Gray agrees to accept a reduction of $12,113.51 plus interest from her total recovery within 30 days.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-