ROY WALTON, A/K/A ROY T. WALTON, PLAINTIFF AND RE-
SPONDENT, v. CITY OF BOZEMAN, A CORPORATION, DEFEND-
ANT AND APPELLANT.

No. 14097.
Submitted Oct. 20, 1978.
Decided Dec. 27, 1978.
588 P.2d 518.

Berg, Angel, Andriolo & Morgan, Bozeman, Ben E. Berg, Jr. argued, Bozeman, for defendant and appellant.

Morrow, Sedivy & Olson, Bozeman, James H. Morrow, Jr. argued, Bozeman, for plaintiff and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Defendant City of Bozeman, appeals from a judgment entered on October 14, 1977, in the Eighteenth Judicial District, Gallatin County, the Honorable Frank E. Blair presiding, awarding plaintiff Roy Walton damages in the sum of $1,250.00, plus $2,000.00 per year until defendant City restores the "Old Walton Ditch".

We affirm the judgment of the District court except for a modification of one item of damages.

Walton and his predecessors, for fifty years or more, have owned approximately thirty acres of agricultural land in Gallatin County, abutting Durston Road on the south. Appurtenant to these lands were rights to fifty miners inches of water from Farmers Canal Company Ditch, and fifty miners inches from Middle Creek Supply Waste Ditch for irrigation and livestock uses.

Before 1964, Walton's lands received irrigation water by means of an irrigation ditch traveling to his lands in a generally northern direction. The "Old Walton Ditch" crossed Beall Street west of the intersection of Beall Street and North Fifteenth Street and, some distance north of that intersection, crossed North Fifteenth Street to the east side of that street. Then the ditch proceeded generally north to and across Durston Road to Walton's property.

The City, expanding as it was in 1964, extended its city limits to the west and north, and caused Fifteenth Street to be reconstructed. In the process, the City closed the "Old Walton Ditch" and installed a new diversion from the Nelson ditch east of Fifteenth Street by means of a cement box. The reconstructed ditch then proceeded generally north on the east side of Fifteenth Street to Durston Road, where a culvert was installed under said road to bring the water to Walton's land.

The new diversion box on the Nelson ditch was a cement structure with an iron grating and the court found the construction of the diversion box was such that from time to time it interfered with the flow of Walton's waters so as to prevent the water from reaching Walton's land.

Moreover, the City, in reconstructing Fifteenth Street, installed a storm sewer under Fifteenth Street itself which discharges its drain-

age waters along the south side of Durston Road, through the culvert under Durston Road, and comes upon Walton's lands, where at times it causes flooding and pollution from the water being received.

Walton has continuously, since the reconstruction and change of place of diversion, notified the City by letter and by telephone call of the problems, and has requested that the original diversion on "Old Walton Ditch" be restored.

The court found that in August 1976, Walton expended $250.00 for equipment and labor to clean out a plugged diversion box. It also affirms that during January and June 1976, Walton's lands became flooded because of waters which came through the storm sewer. The court further found that Walton suffered hay crop losses in the sum of $1,000.00 during the growing seasons of 1976 and 1977. Walton had been pasturing seven horses on his lands from time to time. Either because of pollutants through the storm sewer or the stopping of the flow of water, the horses either have no water to drink or will not drink the water available. When that occurs Walton must resort to filling his water tanks with City water, resulting in additional expense.

The district court concluded plaintiff was entitled to damages against the City in the amount of $1,250.00 and further provided that until the "Old Walton Ditch" be restored in such manner as to allow for the flow of Walton's waters without interruption and without pollution, that he should be paid the sum of $2,000.00 per year by the City.

Judgment based upon such findings and conclusions was entered October 8, 1977, and from that judgment the City appeals.

Appellant city contends: (1) Walton's action for interference with his irrigation ditch, and to compel its restoration is barred by the statute of limitations; (2) the award of $2,000.00 per year until Walton restores the ditch constitutes punitive damages, and not compensatory damages, and that punitive damages may not be awarded against a municipal corporation; and (3) the award of $1,000.00 for hay crop losses is not justified by the evidence.

We address the issue of limitations first. From the beginning, in 1967, Walton complained about the construction of the storm sewer and the relocation of the ditch. He pointed out by letter and by telephone call the drainage problems that would occur and did occur and requested to have his ditch returned to its original location. He also communicated with the City through counsel in an effort to remedy the problems.

In January and June 1976, flooding occurred from the storm sewer. In August 1976, it was necessary to unplug the siphon. Street oil and debris washed onto his land from the storm sewer.

 ▪ It is the position of the City that because the relocation was completed on January 3, 1967, plaintiff's cause of action to relocate the ditch is barred. It is true that section 93-2607, R.C.M. 1947, provides a two-year statute of limitations for injuries to real property. A ditch right is an easement and an easement is an interest in real property. *Hughes v. King* (1963), 142 Mont. 227, 383 P.2d 816; *Mannix v. Powell County* (1921), 60 Mont. 510, 199 P. 914; *City of Missoula v. Mix* (1950), 123 Mont. 365, 214 P.2d 212.

However, Walton also complains of the injury to his hay crop because of the stoppage of irrigation waters and the problems caused by the occasional pollution from the storm sewer and the plugging of the siphon. These are the damages upon which the district court based its damages. Such injuries have been classified as temporary and consequential. *Heckaman v. Northern Pac. Ry. Co.* (1933), 93 Mont. 363, 20 P.2d 258, 261. As such, "the cause of action accrues only at the time of the consequential injury and the Statute of Limitations begins to run from that time." *Heckaman v. Northern Pac. Ry. Co., supra.* Walton is entitled to recover for the yearly injury to his crops caused by the continuing nuisance until the injury is permanent. *Nelson v. C. & C. Plywood Corporation* (1970), 154 Mont. 414, 465 P.2d 314, 324; *Watson v. Colusa-Parrot M. & S. Company* (1905), 31 Mont. 513, 79 P. 14, 16.

The applicable statute of limitation is section 93-2607(2), R.C.M. 1947, which allows two years after the cause of action shall have accrued.

In *Nelson v. C. & C. Plywood Corporation, supra,* this Court said:

"As a general statement, see 39 Am.Jur., *Nuisance* 2d, § 141, page 402, where it is said:

" '. . . Where the injury is not complete so that the damages can be measured at the time of the creation of the nuisance in one action, but depends upon its continuance and the uncertain operation of the seasons or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom. Thus, where the nuisance is temporary and continuous in character, and gives rise to separate causes of action, a recovery may be had for damages accruing within the statutory period next preceding the commencement of the action, although more than the statutory period has elapsed since the creation of the nuisance' . . .''

We hold the damages caused here were a continuing nuisance and as such were within the applicable statute of limitations, because at all times, the City could have abated the nuisance by taking curative action. Since the nuisance was so terminable, it cannot be deemed to be a permanent nuisance as of the creation date in 1967.

On the second issue, the City contends that the award by the district court of $2,000.00 to Walton until such time as the "Old Walton Ditch" is restored is in effect punitive damages, and further contends that punitive damages may not be awarded against a municipal corporation. It is not necessary for us to decide the liability of a municipal corporation for punitive damages in this case, because it appears clear to this Court that the award of the district court was in the nature of compensatory damages applied prospectively to avoid multiple litigation.

There is no doubt that a City is liable for damages with respect to maintaining a nuisance in the same manner as a private person, *Murray v. City of Butte* (1907), 35 Mont. 161, 88 P. 789, 791, and in any event section 17-401, R.C.M.1947, applies to the measure of damages in this case. In other words, because of the nui-

sance Walton is entitled to recover such amount as will compensate him for all the detriment proximately caused by the nuisance.

The award of the court is founded on the evidence that Walton must expend time, equipment and labor in unplugging the diversion box; that his lands are periodically flooded because of waters through the storm sewer; that the polluted waters are such that his horses will not drink the same and he has to supplement their water supply by using city water; that Walton's time and effort, and additional expense are required to overcome the problems created by virtue of the reconstruction of the ditch and the placement of the storm sewer. The court's finding of $2,000.00 per year is a proper sum to compensate damages which substantial credible evidence supports, and we have no power to change the same unless it were clearly erroneous (Rule 52(a), Mont.R.Civ.P.).

It was proper for the court to award a reasonable amount of damages for the continuing interference with the flow of Walton's irrigation water, and the continuing flooding and discharge of polluted waters upon his land.

"Prospective damages" are those which are reasonably certain to follow the state of facts on which plaintiff's suit is based; such damages have not yet accrued at the time of trial, but in the nature things must certainly or most probably result from the state of facts found to be existing at the time of trial. See *State Highway Board v. Coleman* (1948), 77 Ga.App. 756, 50 S.E.2d 262.

Although speculative damages may not be recovered, reasonable certainty that future damages will occur will sustain an award for future damages. This test meets the statutory requirements that such must be reasonable. Section 17-607, R.C.M.1947. See *Cruse v. Clawson* (1960), 137 Mont. 439, 352 P.2d 989. The district court by making the award of future damages relate to any future restoration of the old ditch is in effect giving the City a chance to mitigate its damages. It is proper therefore to affirm the award for future damages in this case.

On the third issue in this case, the City attacks the finding of the district court, that "plaintiff has suffered damage in hay crop

losses in the sum of $1,000.00 during the growing seasons of 1976 and 1977."

Aside from the future damages, the court awarded Walton the sum of $1,250.00 in general damages. Of this sum, $250.00 is supported by the evidence that in August 1976 Walton spent $250.00 to clean out the diversion box which had become plugged. Appellant attacks the hay loss damage award on the ground that Walton's evidence showed that he had lost a "couple of ton or better of hay at $50.00 per ton". No other evidence was offered with respect to the hay loss. This testimony does not meet the test set out in *Agrilease, Inc. v. Gray* (1977), 173 Mont. 151, 566 P.2d 1114. See also *Goetschius v. Lasich* (1960), 137 Mont. 465, 353 P.2d 87. Walton contends that $1,000.00 is sustainable because it was for the loss of his present use of irrigating waters, stock water and pasturing, the extra labor for the water tank, and providing City water for the horses. Unfortunately, the district court did not so characterize the award of damages in its findings.

The award of $250.00 for the labor involved in unplugging the diversion box is absolutely sustainable. It also appears certain from the evidence that some hay loss was sustained by Walton, and that other items of damages were incurred by him. It would be a waste of judicial effort and a needless expense to the parties to send the matter back for retrial on this issue alone. It appears that we can fairly fix the damages recoverable for these items based on the evidence in the sum of $500.00. This is especially suitable since this case was tried without a jury. In defense of the district court, it should be noted that the finding on hay damages was submitted by Walton.

The judgment of the district court is therefore affirmed in all respects except that the original award of general damages in the sum of $1,250.00 is modified to the sum of $500.00. Reversed and remanded for entry of judgment to such effect. Costs to respondent.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and HARRISON concur.