770 F.2d 20
 ZELEZNIK, Carter, Administrator of the Estate of Arnold
Frank Zeleznik, Deceased, and Zeleznik, Carter and
Zeleznik, Elizabeth Jane in their own
right, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 84-1656.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
May 1, 1985.
 Decided Aug. 2, 1985.
 
 S. Gerald Litvin, Ronald L. Wolf, Roberta D. Pichini, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa., for appellants.
 Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Alexander Ewing, Jr., Asst. U.S. Attys., Philadelphia, Pa., for appellee.
 Before SEITZ, WEIS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The plaintiffs, Carter and Elizabeth Zeleznik ("Zelezniks"), appeal from an order of the district court granting summary judgment dismissing as time barred their claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 1346(b), 2671 et seq. (1982). This court has appellate jurisdiction to review final orders pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 The following facts are undisputed. On December 20, 1974, the Zeleznik's son, Arnold, was murdered by Vernal Walford in Miami, Florida. Following their son's murder, the Zelezniks investigated Walford's background. They learned that at the time of the murder, Walford had been recently released from a state psychiatric hospital in Massachusetts where he had been involuntarily committed. They, however, did not discover that after his release, Walford, who was an illegal alien, had unsuccessfully attempted to surrender to the Immigration and Naturalization Service ("INS") in Springfield, Massachusetts. In 1975, the Zelezniks' action against the Massachusetts doctors and hospital was dismissed on the ground of sovereign immunity.
 
 
 3
 It was not until 1982 that the Zelezniks learned that Walford had visited the Springfield INS office a few days before the murder and had given an INS employee a full report on his illegal status, his fraudulent possession of a U.S. passport and his involvement in an illicit drug transaction. Yet the INS allowed him to leave. Walford's visit to the INS was uncovered in the course of a Massachusetts legislative investigation of the practices of the state psychiatric facilities.
 
 
 4
 Within two years of this discovery, on September 19, 1983, the Zelezniks filed an administrative claim with the INS under the FTCA for the wrongful death of their son, and Carter Zeleznik filed a claim as administrator of the son's estate for the son's injuries. They alleged that the INS was negligent in failing to detain Walford and in failing to investigate Walford's past. This claim was rejected by the INS, and the Zelezniks then filed this action in the district court.
 
 
 5
 The government moved to dismiss the complaint for failure to state a claim and also moved for summary judgment on the ground that the statute of limitations had run. Both parties submitted supporting affidavits and exhibits. The district court granted summary judgment in favor of the government on statute of limitations grounds. The Zelezniks then filed this timely appeal.
 
 
 6
 Upon a review of a grant of summary judgment, we do as the district court does: we consider the undisputed facts in the pleadings, affidavits, and exhibits and determine whether the movant was entitled to judgment as a matter of law. First Jersey National Bank v. Dome Petroleum Limited, 723 F.2d 335, 338 (3d Cir.1983). The movant has the burden of demonstrating that there are no genuine issues of material fact, and all reasonable inferences from the record must be drawn in favor of the non-moving party. Small v. Seldows Stationary, 617 F.2d 992, 994 (3d Cir.1980).
 
 II.
 
 7
 Under the FTCA, a claim against the United States is barred unless it is presented to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. Sec. 2401(b) (1982). The Zelezniks' claim is therefore time-barred if it accrued prior to September 19, 1981, two years before the date that they filed a claim with the INS. The Zelezniks contend that their claims against the United States accrued in 1982 when they first learned of Walford's attempted surrender to the INS. The government contends that the Zelezniks' claim accrued in 1974 when Arnold was killed.
 
 
 8
 The determination of when a claim accrues for the purposes of the FTCA is a question of federal law. Tyminski v. United States, 481 F.2d 257, 262-63 (3d Cir.1973). The FTCA is a limited waiver of the sovereign immunity of the United States. The Supreme Court has admonished that the courts should carefully construe the statute of limitations for the FTCA so as not to extend the limited waiver of sovereign immunity beyond that which Congress intended. United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979).
 
 
 9
 The purpose of a statute of limitations is to encourage the filing of claims promptly by giving no more than a reasonable time within which to make a claim. By limiting the period in which a claim may be made, the statute protects defendants from having to defend actions where the truth-finding process is impaired by the passage of time. Kubrick, 444 U.S. at 117, 100 S.Ct. at 356; United States v. Marion 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468 (1971).
 
 
 10
 For tort actions, the general rule is that the cause of action accrues at the time of the last event necessary to complete the tort. Usually, this is at the time the putative plaintiff is injured. Kubrick, 444 U.S. at 120, 100 S.Ct. at 358. An injured party, however, cannot make a claim until he has or should have had notice that he had an action to bring. Thus, the Supreme Court has held that an injured party's cause of action does not accrue until he learns of his injury. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In most cases, when a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him.
 
 
 11
 However, in some circumstances, a person may know that he has been injured but not be sufficiently apprised by the mere fact of injury to understand its cause. Cf. McGowan v. University of Scranton, 759 F.2d 287 (3d Cir.1985) (statute of limitations does not accrue until plaintiff learns of the cause of injury when plaintiff's decedent died of toxic shock syndrome at a time when the cause of toxic shock syndrome had not been discovered by medical science). In those circumstances, when the fact of injury alone is insufficient to put an injured party on notice of its cause, the Supreme Court has indicated that the accrual of the claim would be delayed until the injured party learns of both the fact of his injury and its cause. Kubrick, 444 U.S. at 122, 100 S.Ct. at 359.
 
 
 12
 In the present case, at the time of their son's death, the Zelezniks knew of the immediate cause of his death, the act of Vernal Walford. They, however, did not know of the alleged negligent participation of the INS. They argue that the rule in Kubrick ought to be extended so that the cause of action against INS should not have accrued until they obtained knowledge of INS' alleged involvement. Several courts of appeals have considered and rejected similar contentions. In Dyniewicz v. United States, 742 F.2d 484 (9th Cir.1984), the Ninth Circuit agreed that a cause of action does not accrue until the injured party discovers the cause of the injury, but held:
 
 
 13
 Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered.
 
 
 14
 742 F.2d at 486. See also Steele v. United States, 599 F.2d 823, 828 (7th Cir.1979) ("The immediate cause of his injury ... was apparent and should have put him on notice of an invasion of his legal rights"); Richman v. United States, 709 F.2d 122, 123-24 (1st Cir.1983). But see Barrett v. United States, 689 F.2d 324 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).
 
 
 15
 The Zelezniks contend, however, that these cases take too narrow a view of the general principle underlying the discovery rule announced in Kubrick. They argue that a proper reading of Kubrick would dictate a delay in the accrual of the cause of action until the date that the acts of the INS were discovered. They point to Barrett v. United States, 689 F.2d 324 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), as standing for the proposition that accrual should be delayed until the government action is uncovered.
 
 
 16
 We do not read Barrett as supporting the Zelezniks' position in our factual context. Rather, Barrett involved active concealment by the government of its activities. 689 F.2d at 327-28. When the government actively conceals its own wrongdoing by misrepresentation, there may well be equitable reasons for tolling the statute of limitations. However, it is not suggested that the INS concealed its involvement with Walford. Indeed, it made a record of the incident. Thus, we are not required to consider what may well be an exception to the general rule.
 
 
 17
 We agree with those Courts of Appeals that have held that a claim accrues when the injured party learns of the injury and its immediate cause. The rationale of the discovery rule as announced in Kubrick is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.
 
 
 18
 The Court in Kubrick further held that the accrual date is not postponed until the injured party knows every fact necessary to bring his action. Rather, the Court indicated that the crucial question in determining the accrual date for statute of limitations purposes was whether the injured party had sufficient notice of the invasion of his legal rights to require that he investigate and make a timely claim or risk its loss. Once the injured party is put on notice, the burden is upon him to determine within the limitations period whether any party may be liable to him. Davis v. United States, 642 F.2d 328 (9th Cir.1981), cert. denied, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982). An injured party with the knowledge of injury and its immediate cause is in no worse position than any other plaintiff who must determine whom to sue in a obscure factual context. See, e.g., Wilkinson v. United States, 677 F.2d 998, 1002 (4th Cir.), cert. denied, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982).
 
 
 19
 The Zelezniks contend, however, that the application of this "injury and immediate cause" standard would be unjust in their case because a reasonable investigation begun in 1974 would not have turned up the INS involvement. They are essentially contending that the statute of limitations does not begin to run so long as a reasonably diligent investigation would not have discovered the government's actions.
 
 
 20
 The difficulty with such a reasonableness standard is that it would make every accrual date indefinite as to unknown possible parties. The statute of limitations is meant to be applied in a uniform manner. Steele v. United States, 599 F.2d 823, 826 (7th Cir.1979). Section 2401(b) does not guarantee that every injured party will necessarily be able to find and make a claim against a possibly responsible governmental agency. Rather, it represents a Congressional determination of a reasonable amount of time for injured parties in general to discover and make claims against the government. See Kubrick, 444 U.S. at 117, 100 S.Ct. at 356. Clearly, the statute of limitations impacts more harshly on some cases than others. For some claims, two years is more than enough time to bring a claim, and for others, it is all too short. However, the statute reflects a Congressional judgment balancing the relative interests of plaintiffs and the government in fixing a single definite limitations period.
 
 
 21
 Nor is the Zeleznik's position compatible with the Supreme Court's reasoning in Kubrick, even though that case is not precisely in point. In Kubrick, the Court stated that even if a putative malpractice plaintiff conducts a reasonable investigation and relies upon erroneous medical advice that there was no negligence, the beginning of the limitations period would not be postponed.
 
 
 22
 [T]he putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit.
 
 
 23
 444 U.S. at 124, 100 S.Ct. at 360. The Court's language suggests that once an injured party learns of his injury and its immediate cause, then he is on the same footing as any other injured party. The fact that a reasonably diligent investigation would not have discovered the defendant's involvement is no longer relevant for the purposes of accrual of the statute of limitations. Davis v. United States, 642 F.2d 328 (9th Cir.1981), cert. denied, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982).
 
 
 24
 The undisputed facts show that the Zelezniks knew in 1974 of their injury and its immediate cause. The Zelezniks therefore possessed sufficient critical facts to investigate, and there was no active concealment by the INS. Thus 1974 was the date when the statute began to run on any claim against the government. Admittedly, there is a certain harshness in this application of the rule but such a consequence is implicit in statutes of limitations generally.
 
 III.
 
 25
 The order of the district court will be affirmed.