**Paul A.R. STEWART**

v.

**UNITED STATES of America.**

Civ. A. No. 88–5821.

United States District Court,
E.D. Pennsylvania.

June 27, 1989.

See also 713 F.Supp. 833.

Allan H. Gordon, Kolsby & Gordon, P.C., Philadelphia, Pa., for plaintiff.

Susan D. Bricklin, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

*Findings of Fact*

1. On January 16, 1976, Gene Stewart, plaintiff's father, brought his son, Paul, to Dr. Jack Hughes, a civilian urologist at the Coppridge Urologic Group in Durham, North Carolina.

2. At the time of the examination, Paul Stewart was eleven years old. Dr. Hughes made contemporaneous handwritten notes and a typewritten case summary of the examination.

3. Dr. Hughes' contemporaneous case summary memorializes that he advised Gene Stewart that surgery was necessary, but that even if surgery were to be successful, there was a very good chance that Paul would be sterile. This is persuasive evidence that Gene Stewart was notified at that time of the risk of sterility facing his son. I credit Dr. Hughes' testimony that he so informed Gene Stewart during or after the examination. I do not credit Gene Stewart's testimony that while Dr. Hughes advised surgery, he did not discuss the issue of sterility. Dr. Jackson, who performed two operations on plaintiff shortly thereafter, never assured Gene Stewart of Paul's fertility; indeed he could not and did not determine whether Paul was sterile. R. 15, 17–18, 22. On the basis of the testimony of Dr. Hughes and Dr. Jackson I find that Gene Stewart actually knew in 1976 that there was a very good

chance that as a result of having undescended testes, his son would be sterile, even in the event of successful surgery to descend them.

4. I credit Gene Stewart's testimony that he was told by Dr. Hughes that he had waited too long to have his son's testes surgically descended, and that the procedure should have been done much earlier in the boy's life. On the basis of this testimony, I find that in 1976 Gene Stewart possessed facts that would have led a reasonable person to know or suspect that this delay was the cause of his son's probable sterility.

5. In May, 1985, in anticipation of marriage and at the request of his fiance, Paul Stewart was examined for the purpose of determining his sperm count. The results of the sperm count indicated that Paul Stewart was sterile. No investigations by Gene Stewart or Paul Stewart into whether or not Paul Stewart was sterile were made prior to May, 1985.

6. The evidence shows that in 1968 the standard of care in treating undescended testes required an attempt surgically to correct the condition by the time Paul Stewart reached the age of ten. Dr. Schneeberg R. at 17; Dr. Slotoroff R. at 25. Therefore, if Dr. Cleveland told Gene Stewart in 1968 that he should do nothing about his son's condition until the boy reached the age of thirteen or entered puberty, that advice would have fallen below the standard of care.

7. In any event, assuming that Dr. Cleveland did act negligently, plaintiff has not met his burden of showing that the alleged malpractice most probably caused his sterility, as is required by South Carolina law. I credit Dr. Schneeberg's opinion that Paul Stewart's testes were impaired at birth and that Paul had no opportunity of fathering a child from birth, R. at 24, that at the age of four Paul's testes were small and already probably had no spermatogenic function, R. at 14, and that delaying a second surgery until age eleven had no effect on Paul's later ability to father children. R. at 23–24. I do not credit Dr. Slotoroff's testimony that the

delay in treatment most probably caused Paul's sterility. R. at 34.

8. On the causation issue, plaintiff has also not met his burden of showing that his sterility is most probably due to the condition of his remaining teste, and not to some other factor, such as canal blockage. Dr. Jackson informed Gene Stewart following surgery in 1976 that Paul's right teste was viable, and it may still be viable. Plaintiff has not established why he is sterile. I also credit Dr. Schneeberg's testimony that the right teste had been descended sufficiently in 1968 so that if it was fertile at that time, its position would not affect its fertility. R. at 13.

*Conclusions of Law*

1. Plaintiff's claim is barred by the statute of limitations. 28 U.S.C. § 2401(b).

2. Following plaintiff's examination by Dr. Hughes in 1976, Gene Stewart possessed sufficient critical facts to put him on notice that a wrong had been committed and that he needed to investigate to determine whether his son was entitled to redress. *Zeleznik v. United States,* 770 F.2d 20, 23 (3d Cir.1985).

3. Plaintiff's sterility was not most probably caused by the alleged malpractice of Dr. Cleveland.

### JUDGMENT

AND NOW, this 27th day of June, 1989, after a trial on the merits, JUDGMENT is hereby entered in favor of defendant, the United States of America, and against plaintiff, Paul A.R. Stewart.