**Sherry L. DILTZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–175 MMS.**

United States District Court, D. Delaware.

July 23, 1991.

Bernard A. Van Ogtrop, of Cooch & Taylor, Wilmington, Del., Walter A. Oleniewski, of Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, Md., for plaintiff.

William C. Carpenter, Jr., U.S. Atty., Kent A. Jordan, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This action was filed by plaintiff against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 1346(b) & §§ 2671 *et seq.*, seeking recovery for injuries she allegedly suffered during one or more surgical attempts by United States armed forces' medical personnel to correct a ptosis, or drooping eyelid, in her left eye. The United States has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that plaintiff's claim is barred by the two-year statute of limitations set forth at 28 U.S.C.A. § 2401(b).

At oral argument, the United States, citing *Barren by Barren v. United States,* 839 F.2d 987, 992 (3d Cir.), *cert. denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988), asserted that its motion was primarily a Rule 12(b)(1) motion challenging the court's subject matter jurisdiction. As a consequence, the United States urged, plaintiff bears the burden of establishing

the jurisdictional facts, and the court may review the record outside the pleadings and resolve any factual disputes.

■ In the recent case of *Irwin v. Veterans Administration,* — U.S. ——, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the United States Supreme Court held that statutory time limits applicable to lawsuits against the Federal Government are subject to equitable tolling in the same way that the rule of equitable tolling may be applied to suits between private individuals. *Id.,* 111 S.Ct. at 457. Necessary to the Court's express holding in *Irwin* is the implicit holding that compliance with the statute of limitations is not a jurisdictional prerequisite to suits against the government. *Schmidt v. United States,* 933 F.2d 639, 640 (8th Cir.1991). Consequently, the two-year limitation period of section 2401(b) does not implicate the court's subject matter jurisdiction, and failure to comply with it is merely an affirmative defense, the burden of establishing that defense being upon the United States. *Id.* The United States' motion, therefore, should not be assessed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), but rather as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

The United States filed an Answer to the complaint in this case on June 20, 1990. The Rule 12(b) motion to dismiss was filed January 23, 1991 and is therefore not timely. Fed.R.Civ.P. 12(b). Further, the Answer does not assert a statute of limitations defense. Counsel for the United States informed the court at oral argument that the facts giving rise to the United States' motion came to light during discovery. The United States will be granted permission to amend its Answer to plead a statute of limitations defense to conform with the evidence. Because a responsive pleading was filed in this case prior to the filing of the Rule 12(b) motion and because both parties submitted for the court's consideration materials outside the pleadings, the motion to dismiss will be treated as a motion for summary judgment. Fed.

R.Civ.P. 12(b). For the reasons stated, the United States' motion will be denied.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ The court must ascertain whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both *genuine* and *material. Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. A dispute over facts is "material" if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is "genuine" if a reasonable jury could return a verdict for the non-movant. *Id.*

■ Doubts as to the existence of genuine issues of fact will be resolved against the party moving for summary judgment. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Cooper v. Merrill,* 736 F.Supp. 552, 558 (D.Del.1990). When the movant has carried its burden under Rule 56(c), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted) (footnote omitted). The non-moving party must produce more than a "mere scintilla" of evidence to successfully oppose summary judgment. *See Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1989). Any inferences to be drawn from the underlying facts must be viewed in the

light most favorable to the party opposing summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Wilmington Housing Authority v. Pan Builders, Inc.,* 665 F.Supp. 351, 353 (D.Del. 1987).

■ The inquiry undertaken by the court in resolving a motion for summary judgment is similar to that for granting a directed verdict; the court must ascertain "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2507. This does not mean, however, that the court in deciding a motion for summary judgment may weigh the evidence. The court should not grant summary judgment merely because it believes the movant will prevail at trial. Nor should the court grant summary judgment in the belief that a jury verdict for the non-movant at trial would be set aside as against the weight of the evidence. *See* 6 J. Moore & J. Wicker, *Moore's Federal Practice* § 56.15[6].

With these principles in mind, the court turns to the motion presently before it.

FACTS

Between 1975 and 1982, plaintiff, a military dependent, underwent two surgical procedures at the United States Naval Hospital in Philadelphia, Pennsylvania and another surgery at Malcolm Grow Medical Center at Andrews Air Force Base to correct a congenital ptosis of the left eyelid (a drooping left eyelid). All three procedures were unsuccessful in correcting the ptosis. Complaint ¶¶ 6–11 (Dkt. 1).

Beginning in 1982, plaintiff experienced difficulty controlling her left eye, which would "wander" involuntarily to the left without returning to midline. She sought medical treatment for her wandering eye at various military medical facilities. *Id.* ¶¶ 12–13. On January 1, 1987, plaintiff underwent additional surgery on her left eye at the Army Regional Medical Center at Landstuhl, Germany. The surgery was performed by Captain Richard Spaide. Following the surgery, Captain Spaide informed plaintiff that her wandering eye was caused by scarring which resulted from an alleged misplaced incision into the orbital fat of the left eye. Plaintiff asserts the incision occurred during one or more of the prior surgeries performed by United States military personnel to correct her ptosis. *Id.* at ¶¶ 15–16. Plaintiff also asserts that she did not know and could not reasonably have known that her wandering eye was caused by a misplaced incision during one or more of the previous surgeries until she was so informed by Captain Spaide in January 1987. *Id.* ¶ 17.

Plaintiff filed an administrative claim with the Department of the Navy on July 15, 1987. When the Navy failed to render final disposition on her claim within the statutory period, plaintiff filed this suit against the United States pursuant to the FTCA.

The United States asserts that plaintiff was aware that the cause of her wandering eye was a misplaced surgical incision more than two years prior to filing her administrative claim on July 15, 1987.[1] The United States contends, therefore, that plaintiff's suit is time-barred by the applicable statute of limitations. 28 U.S.C.A. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...").

The question to be decided in the motion at bar is when plaintiff's claim "accrued" for purposes of section 2401(b). As evidence of its allegation that plaintiff's claim accrued prior to July 14, 1985, the United States entered into the summary judgment record the notes and "declaration" of Dr. Charles Pegram, an optometrist formerly serving with the United States Air Force and stationed at Dover Air Force Base.

---

1. For purposes of this motion only, the United States concedes the allegation that plaintiff's wandering eye was caused by a misplaced incision during surgery performed by United States military personnel. Defendant's Opening Brief at 3 n. 2 (Dkt. 18).

Dr. Pegram's notes indicate that he saw plaintiff on December 2, 1983. Exh. A at Bates No. 00130, Defendant's Opening Brief (Dkt. 18). Plaintiff apparently consulted Dr. Pegram regarding her wandering left eye. Dr. Pegram's notes contain the statement: "Told before that scar tissue from ptosis surgery causing restriction." Declaration of Dr. Charles Pegram at 2, attached as Exh. A to Defendant's Opening Brief (Dkt. 18). Dr. Pegram states that this sentence reflects what plaintiff told him during the examination. He also states that he did not himself diagnose plaintiff's wandering eye as being caused by previous surgical scarring.

Plaintiff has consulted numerous physicians in search of a cure for her wandering eye. While she does not specifically deny being examined by Dr. Pegram in 1983, plaintiff, both in her deposition and in an affidavit, asserts that she does not recall being treated by Dr. Pegram in 1983 or ever.[2] Diltz Deposition at 31, attached as Exh. B to Defendant's Opening Brief (Dkt. 18); Affidavit of Sherry Diltz at ¶ 9, attached as Exh. A to Opposition to Motion to Dismiss (Dkt. 21). Plaintiff insists that, despite numerous consultations and examinations, no physician or other medical professional ever informed her that a previous misplaced surgical incision caused her wandering eye prior to Captain Spaide's diagnosis in 1987. Plaintiff speculates that the sentence in Dr. Pegram's notes may reflect that she mentioned to him that her mother (who does not have medical training) had expressed concern that certain scar tissue visible in the inner corner of her left eye might be related to her wandering eye. Affidavit of Sherry Diltz at ¶¶ 7–9, at-

tached as Exh. A to Opposition to Motion to Dismiss (Dkt. 21).

## ANALYSIS

█ The determination of when an FTCA claim accrues for purposes of section 2401(b) is a question of federal law. *Zeleznik v. United States,* 770 F.2d 20, 22 (3d Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986).

In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the United States Supreme Court addressed the question of when a medical malpractice claim against the United States accrues for purposes of section 2401(b). In that case, the Court overturned a lower court's ruling that an FTCA claim for medical malpractice does not accrue until the claimant learns that the treatment he received was improper and that the acts causing the injury may constitute actionable medical malpractice. Rather, the Court held that a medical malpractice claim against the United States accrues when the claimant is "in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* at 122, 100 S.Ct. at 359. The Court emphasized that once a claimant has this knowledge, he is in a position to investigate and determine whether he has a legal cause of action against his health care provider. *Id.* at 122–24, 100 S.Ct. at 359–60. *See also Zeleznik,* 770 F.2d at 23 ("The rationale of the discovery rule as announced in *Kubrick* is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.").

---

**2.** During plaintiff's deposition, the following exchange took place:

    Q. Do you remember seeing a Dr. Pegram in 1983? He is an optometrist at Dover Air Force Base?
    A. Was he an ophthalmologist?
    Q. No, an optometrist.
    A. I don't remember him.
    Q. His note reports that you were told before that scarring could have caused the exotropia. Do you remember anybody having told you that before 1983?
    A. I don't remember.

    Q. Is that possible?
    A. It could be possible, yes.
Diltz Deposition at 30–31, attached as Exhibit B to Defendant's Opening Brief (Dkt. 18).

    Plaintiff asserts in her affidavit: "When I answered 'it could be possible, yes,' I meant that it could be possible in the sense in which all things are possible but that I had no specific recollection of being so told before to [sic] 1983 (or, indeed before 1987)." Affidavit of Sherry Diltz at ¶ 13, attached as Exh. A to Opposition to Motion to Dismiss (Dkt. 21).

The Third Circuit Court of Appeals has noted that in some circumstances, the mere fact of injury may be sufficient to put a claimant on notice that he or she should investigate to determine whether to file a claim. In such cases, the claim accrues when the injury manifests itself. *Zeleznik*, 770 F.2d at 22. In circumstances where the fact of injury alone would not put plaintiff on notice that his rights may have been violated, the claim accrues when the plaintiff learns of both the fact of injury and its cause. *Id.* at 22–23 (citing *Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359). The court in *Zeleznik* defined "cause" as the "immediate" or "physical" cause of the injury. *Id.* at 23. Where the fact of injury alone does not put the claimant on notice, some courts have held that the claim does not accrue until the cause of the injury is diagnosed by a physician. *Nicolazzo v. United States*, 786 F.2d 454, 457 (1st Cir.1986); *Stoleson v. United States*, 629 F.2d 1265, 1270 (7th Cir.1980).

In the motion at bar, the dispute centers on when plaintiff first learned the immediate or physical cause of her wandering eye.[3] Defendant asserts that plaintiff has failed to raise an issue of fact to counter the inference arising from the notes and declaration of Dr. Pegram that she knew in 1983 that the prior surgery was the cause of her wandering eye.

This is not a case where plaintiff has contradicted her previous testimony. Plaintiff has consistently maintained in both her deposition and her affidavit that despite examinations by many physicians to determine the cause of her eye problem, no physician diagnosed a misplaced surgical incision as the cause of her wandering eye until Captain Spaide did so in 1987. Plaintiff's assertion is supported by the fact that there is apparently nothing in plaintiff's medical records indicating such a diagnosis prior to 1987 with the exception of the single sentence in Dr. Pegram's notes.

Although plaintiff does not specifically recall her conversation with Dr. Pegram, she has offered a plausible explanation for the sentence in the notes.[4] Dr. Pegram does not have any independent recollection of his conversation with plaintiff. Additionally, the note and declaration indicate that Dr. Pegram did not himself diagnose the cause of plaintiff's eye condition as a misplaced prior surgical incision. Declaration of Dr. Pegram at 5, attached as Exh. A to Defendant's Opening Brief (Dkt. 18). The United States makes much of the sentence in Dr. Pegram's note stating "IMP: intractable diplopia 2 [degree sign] scarring from ptosis surgery" and the notation that Dr. Pegram referred plaintiff to Bethesda Naval Hospital. From this, the United States infers that Dr. Pegram referred plaintiff to Bethesda Naval Hospital because he believed that a misplaced incision could be the cause of plaintiff's wandering eye. Nothing in the record indicates that Dr. Pegram informed Bethesda Naval Hospital of this "impression" or that the doctors at Bethesda considered surgical scarring as a possible cause of plaintiff's eye problem.

Further, Dr. Pegram does not assert that plaintiff told him in 1983 that a physician had previously diagnosed the cause of her

**3.** Contrary to defendant's assertion, this case is not the "virtual image" of the fact situation in *Kubrick*. In *Kubrick*, it was undisputed that the plaintiff was aware of his injury and had been informed by a physician of its probable physical cause more than two years prior to filing his administrative claim. *Kubrick*, 444 U.S. at 118, 100 S.Ct. at 357. The question in that case was whether this knowledge, without more, was sufficient to cause the limitation period to begin to run.

**4.** The concern voiced by plaintiff's mother regarding a possible causal connection between the scar tissue visible in plaintiff's left eye and her wandering eye is insufficient by itself to put plaintiff in possession of the critical facts and

start the limitation period running. *Stoleson*, 629 F.2d at 1270 ("A layman's subjective belief, regardless of its sincerity or ultimate vindication, is patently inadequate to go to the trier of fact."). The summary judgment record is insufficient to determine whether plaintiff's mother's concern should have or did put plaintiff on notice to investigate with a physician the possible link between her previous surgeries and her wandering eye. At any rate, as the summary judgment record now stands, the scar tissue which drew the attention of plaintiff's mother was not the cause of her condition. Affidavit of Sherry Diltz ¶ 14, attached as Exh. A to Opposition to Motion to Dismiss (Dkt. 21).

wandering eye as a misplaced surgical incision. Dr. Pegram's notes and declaration do not necessarily render plaintiff's assertion that she was unaware of the cause of her wandering eye prior to 1987 implausible. *Cf. Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 ("[I]f the factual context renders respondents' claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary."). In light of plaintiff's explanation and the lack of medical records evincing a prior diagnosis that the surgical incision caused plaintiff's wandering eye, conflicting inferences arise from the evidence in the summary judgment record.

The United States asserts that, even if no physician prior to 1987 diagnosed the misplaced surgical incision as the cause of plaintiff's wandering eye, plaintiff in the exercise of reasonable diligence should have discovered the cause prior to 1987. Essentially, the United States' argument is as follows: Dr. Pegram's note indicates that, regardless of the source of the information, plaintiff was sufficiently aware of the possibility that her wandering eye was caused by scarring from a prior surgical incision to raise the concern with a treating medical professional. The fact that neither Dr. Pegram nor the doctors at Bethesda Naval Hospital to whom plaintiff was referred made such a diagnosis does not toll the limitation period, and plaintiff's suit is time-barred. The doctors at Bethesda Naval Hospital offered several possible explanations for plaintiff's wandering eye, none of which included scarring from a prior surgical incision. "Several circuits have suggested that 'where a claimant is given a "credible explanation" of his condition not pointing to malpractice, he may not be found to have failed to exercise reasonable diligence because he did not earlier pursue his claim.' " *In re Swine Flu Products Liability Lit.*, 764 F.2d 637, 641 (9th Cir. 1985) (quoting *Exnicious v. United States*, 563 F.2d 418, 422 & 424 (10th Cir.1977) and citing numerous cases). In other words, a patient may reasonably rely upon his doctor's representation of the cause of his malady. *Lundy v. Union Carbide Corp*,

695 F.2d 394, 397 (9th Cir.1982) (even though plaintiff himself raised the possibility that pleural scarring could be the result of exposure to asbestos, the fact that treating physician rejected plaintiff's suggestion supports inference that plaintiff did not have knowledge of the cause of his medical problem).

The United States contends that plaintiff should not be entitled to rely upon statements by the various physicians who examined her eye both before and after 1983 because all of the physicians she consulted were in the employ of the United States. Phrased simply, the United States contends that plaintiff should not be entitled to toll the statute of limitations because agents of the defendant failed to provide her with information which would give rise to her claim against defendant. The United States would have the court rule that, when a military dependent suffers an injury which may have been caused by prior negligence of military physicians, the dependent may not consult military doctors, by whom she is entitled to be treated, but must instead consult and pay civilian doctors in order to preserve her claim. Defendant's argument necessarily implies that military doctors consulted by plaintiff would conceal the fact that surgical scarring might have caused plaintiff's wandering eye. The court will not make such a holding on the record before it. Moreover, any concealment attributable to defendant would likely result in equitable tolling of the statute of limitations in any event. *Irwin*, 111 S.Ct. at 458.

Where there is conflicting evidence, the issue of when a claimant knew the critical facts regarding his injury so as to start the limitation period running must await resolution by the trier of fact. *See In re Swine Flu Products Liability Lit.*, 764 F.2d 637, 642 (9th Cir.1985); *Oslund v. United States*, 701 F.Supp. 710, 712 (D.Minn.1988). The court should not grant summary judgment for the defendant unless it "appear[s] conclusively from the record that the claimant knew or should have known of the alleged malpractice at a time beyond the limitations bar...." *Exnicious v. United*

*States,* 563 F.2d 418, 424 (10th Cir.1977); *see also Gallick v. United States,* 542 F.Supp. 188, 192 (M.D.Pa.1982).

Plaintiff has raised more than a mere scintilla of evidence or a metaphysical doubt in opposition to defendant's motion for summary judgment. In order to grant defendant's summary judgment motion, the court must disregard the testimony of plaintiff that no physician diagnosed the cause of her wandering eye as a misplaced surgical incision prior to 1987. The court cannot judge credibility or weigh evidence on a motion for summary judgment. The court finds there is a genuine issue of material fact which must be resolved at trial as to when plaintiff possessed the critical facts regarding the cause of her wandering eye so as to start the limitation period running. Consequently, defendant's Motion to Dismiss, treated as a motion for summary judgment, will be denied.

An appropriate order will be entered.