**EDNA SANTIAGO, Plaintiff**

**v.**

**VIRGIN ISLANDS HOUSING AUTHORITY, A.B.C. COMPOUNDING COMPANY, INC., B.C. ENGINEERING SUPPLIES, INC. and ABC JANITORS OF ST. CROIX, INC., Defendants**

SX-02-CV-537

Superior Court of the Virgin Islands

Division of St. Croix

October 31, 2007

LEE J. ROHN, ESQ., Law Offices of Rohn & Cameron, Christiansted, VI, *Attorney for Plaintiff.*

WILFREDO A. GEIGEL, ESQ., Gallows Bay, VI, *Attorney for A.B.C. Compounding Company.*

JOHN SOPUCH, ESQ., Law Offices of John A. Sopuch, III, Christiansted, VI, *Attorney for Virgin Islands House Authority.*

CAROL G. HURST, ESQ., St. Thomas, VI, *Attorneys for Third-Party Defendant ABC Janitors of St. Croix, Inc.*

D'ERAMO, *Judge*

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

(October 31, 2007)

This matter is before the Court on various pending motions by the parties.

### Facts

On August 23, 2002, Plaintiff Edna Santiago filed a complaint alleging that, on or about October 22, 2001, she slipped and fell in the bathroom

of her apartment located at #95 Williams Delight, in Frederiksted, St. Croix. The apartment is a part of a housing community operated and managed by Defendant Virgin Islands Housing Authority (hereinafter "VIHA"). Plaintiff alleges that she fell because sewage water drained into her apartment. Plaintiff further alleges that she contacted the management of the Housing Community the next day to report the incident. VIHA sent Mr. Norman Stanley, a maintenance worker, to Santiago's residence to assist with the clean up of the sewage and to unclog the sewer line.

Santiago further alleges that she observed Stanley open a bucket of what was later determined to be Red Hot Sewer Solvent ("sewer solvent"), and pour some of the contents down the main sewer line, which was located outside of Santiago's back door. Upon contact with the water in the sewer pipes, the sewer solvent foamed and emitted a foul odor. Santiago stated she closed the door but the fumes had already permeated the apartment and began to irritate and burn Santiago's eyes, throat, nose and face. As a result, Santiago alleges that she has suffered physical injuries, medical expenses, pain, and suffering.

Santiago originally filed against VIHA and Taylor Labs Inc., who Santiago alleged was the manufacturer of the sewer solvent. Afterwards, Plaintiff stipulated to dismiss Taylor Labs.

On March 20, 2003, Santiago filed a Motion to Amend the Complaint to add A.B.C. Compounding, Inc. as a Defendant. Santiago alleged that A.B.C. Compounding, Inc. was the distributor that sold the sewer solvent to VIHA.

On June 13, 2003, VIHA filed a motion for leave to add B.C. Engineering Supplies, Inc., as a third party defendant. Plaintiff filed a motion to amend the Complaint and add B.C. Engineering Supplies as a Defendant. The Court granted Plaintiff leave to file the Second Amended Complaint; however, on December 28, 2005; an order was entered granting Plaintiff's Motion to Dismiss B.C. Engineering Supplies because it apparently was not the distributor of Red Hot Sewer Solvent.

On August 4, 2004, VIHA filed a motion to add ABC Janitors of St. Croix, Inc. as a third party defendant. VIHA alleged that a review of their records indicated that ABC Janitors sold VIHA the sewer solvent. The Court granted VIHA's motion, as well as Plaintiffs motion for leave to file a Third Amended Complaint adding ABC Janitors of St. Croix, Inc. as a Defendant.

 

The various pending motions in the instant case came before the Court on November 17, 2007. The dispositions of these motions are set forth below.

## Motion for Partial Summary Judgment by VIHA

The VIHA asks the Court to grant partial summary judgment on the issue of whether Plaintiff's recovery is limited to $50,000 under Title 29 V.I.C. §87. The motion is granted in part and denied in part.

Title 29 VIC § 87, *Limitations on liability*, provides as follows:

(a) No judgment shall be rendered against the Virgin Islands Housing Authority in excess of $50,000.00 in any suit or action against the Authority **with respect to any injury or loss of property or personal injury or death** which:

(i) may be caused by the negligent or wrongful act or omission of an employee of the Virgin Islands Housing Authority while acting within the scope of his employment under circumstances where the V.I. Housing Authority, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred; or

(ii) may occur in connection with the operation of the use of the V.I. Housing Authority facilities.

(b) The provisions of subsection (a) of this section shall not apply if the injury or loss of property or death is caused by the gross negligence of an employee of the V.I. Housing Authority while acting within the scope of his employment.

(c) The V.I. Housing Authority consents to have the liability determined in accordance with the same rules of law as is applied to actions in the courts of the Virgin Islands against individuals or corporations.

(d) Board Members of the V.I. Housing Authority, while acting within the scope of their duties as board members, shall not be subject to personal or civil liability resulting from the exercise of any of the Authority's purposes, duties or responsibilities, unless the conduct of the member is determined by a court of competent jurisdiction to constitute willful wrong doing or gross negligence (*emphasis added*).

In the instant case, Plaintiff alleges that she suffered two distinct injuries as a result of two separate types of conduct by VIHA employees.

As to VIHA's alleged failure to maintain sewage lines or to warn Plaintiff about malfunctioning sewage lines, Plaintiff has not provided evidence in opposition to the Motion for Summary Judgment that would permit a reasonable jury to find that a VIHA employee was grossly negligent.

As to Plaintiff's claims of injury resulting from inhalation of fumes from the sewage solvent, Plaintiff has cited deposition testimony from the VIHA employee applying the solvent that he failed to give Plaintiff warnings that he ordinarily would have given to tenants. Thus it would be possible for a reasonable jury to find that the VIHA employee was grossly negligent in this instance.

■ ■ Therefore, the Court holds that the limitations of liability provided for by 29 V.I.C. § 87 (a) shall apply with respect to Plaintiff's claimed injuries from slipping and falling on sewage. The Court will deny summary judgment as to Plaintiff's claims for injuries resulting from the inhalation of solvent fumes.

## Motion to Dismiss and Motion for 60(b) Relief by ABC Janitors of St. Croix, Inc.

The Motion to Dismiss and Motion for 60(b) Relief by ABC Janitors both seek the same relief: dismissal of Plaintiff's action against ABC Janitors on statute of limitations grounds. The motions will be denied without prejudice.

Plaintiff alleges she was injured by fumes from the sewer solvent on October 23, 2001. It is undisputed that VIHA served interrogatory responses on Plaintiff in January of 2003, indicating that ABC Janitors was the supplier of the sewer solvent. A Third Party Complaint was filed by VIHA against ABC Janitors in August of 2004, followed by a Motion to Amend the Complaint to add ABC Janitors as a party. The Third Party Complaint and Amended Complaint were served on ABC Janitors in August and September of 2004. Thus, Plaintiff's claim against ABC Janitors was filed more than two years after her alleged injury. Plaintiff responds that her claim should not be barred because of the Discovery Rule and the Relation Back Doctrine.

Plaintiff cites to *In re: Tutu Wells Contamination Litigation*, 909 F. Supp. 980 (D.V.I. 1995) in support of her claim that the Discovery Rule mandates that the statute of limitations on her case against ABC Janitors should not begin to run until January of 2003, when VIHA's interrogatory

responses identified ABC Janitors as the supplier of the sewer solvent. The court disagrees for the following reasons:

The traditional formulation of the Discovery Rule is as follows:

> The statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress ... Once the injured party is put on notice, the burden is his to determine within the limitations period whether any party may be liable to him.

*In re: Tutu Wells Contamination Litigation*, 909 F. Supp. 980 at 986, citing *Zeleznik v. United States*, 770 F.2d 20 (3d Cir. 1985), *cert. denied*, 475 U.S. 1108, 106 S. Ct. 1513, 89 L. Ed. 2d 913 (1986). But the District Court in *Tutu Wells* adopted what it acknowledged was a minority interpretation and applied a special "Environmental Discovery Rule." The District Court's formulation of the Environmental Discovery Rule was as follows:

> [I]n Virgin Islands' common law tort claims premised on environmental contamination, the environmental discovery rule will prevent the applicable statute of limitations from beginning to run until the plaintiff knew or should have known through the exercise of reasonable diligence sufficient critical facts to put him on notice that (1) he has been injured and (2) the actions or inactions of a particular party could have been a cause of that injury, *id.*

■ The District Court's opinion makes it clear that its intent was to apply the Environmental Discovery Rule solely to cases of environmental contamination, as opposed to a personal injury such as is alleged in the instant case.[1] Thus, this Court will not apply it in the instant case. Therefore, the statute of limitations on Plaintiff's claims against ABC Janitors began to run on the date of her injury, and expired two years therefrom.

---

[1] *Tutu Wells* is clear that the environmental discovery rule applies to instances in which the alleged harm is the contamination of the environment. It is therefore distinguishable from this case, involving injury to a person, even though the injury was allegedly caused by a substance that could be considered an environmental contaminant. To apply the environmental discovery rule in a personal injury matter would have the effect of eviscerating the notion of a statute of limitations, and would essentially impose a regime analogous to the laches analysis in maritime cases to every tort case.

■ As for the applicability of the Relation Back Doctrine, ABC Janitors cites to *Jeppesen v. V.I. Pleasure Boats*, 20 V.I. 397 (Terr. Ct. 1984) for the proposition that the Relation Back Doctrine does not apply to the filing of a direct complaint against a third party defendant. However, *Jeppesen* predates the 1991 amendments to FED. R. CIV. P. 15 liberalizing the Relation Back Doctrine in light of the Supreme Court decision in *Schiavone v. Fortune*, 477 U.S. 21, 106 S. Ct. 2379, 91 L. Ed. 2d 106 (1986). Plaintiff, within the statute of limitations, joined an entity called B. C. Engineering Supplies, Inc., as the alleged supplier of the sewer solvent. It is therefore possible that Plaintiff's efforts to join ABC Janitors may relate back to her filing against B. C. Engineering under Rule 15(c)(3). Thus, Plaintiff should have the opportunity to conduct discovery to determine whether ABC Janitors received such notice as would permit relation back under Rule 15(c)(3).[2]

## ABC Compounding Inc.'s Motion for Summary Judgment

Defendant ABC Compounding, Inc. filed a Motion for Summary Judgment on September 7, 2005. Plaintiff Santiago filed an Opposition on October 7, 2007 and ABC Compounding Inc. filed a Reply to the Opposition thereafter. For the reasons below, the Motion for Summary Judgment will be granted.

ABC Compounding's motion claims that Plaintiff's common law causes of action against it are preempted by the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 *et seq.* The FHSA contains an explicit preemption provision, which states:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsection (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such a cautionary la-

---

[2] If ABC Janitors was a party to this case solely because of Plaintiff's claim, the Court might consider restricting discovery to issues relevant to Rule 15(c)(3) issues. However, ABC Janitors is also a party because of an undisputedly timely third party complaint, and therefore the Court will not do so.

beling requirement is identical to the labeling requirement under 2(p) or 3(b). . . . 15 U.S.C. § 1261(b)(1)(A).[3]

The FHSA does not provide a private cause of action. See *Pennsylvania General Insurance Co. v. Landis*, 96 F. Supp. 2d 408 (D.N.J. 2000) *aff'd Pennsylvania General Ins. Co. v. Landis*, 248 F.3d 1131 (3d Cir. 2000).[4] Since Plaintiff has advanced only common law claims against ABC Compounding, the effect of preemption would be dismissal of Plaintiff's complaint against ABC Compounding. Thus, the issue is whether the sewer solvent is subject to a cautionary labeling requirement under 15 U.S.C. § 1261(p) or 15 U.S.C. § 1262(b).

Title 15 U.S.C. § 1261(p) states that:

> The term "misbranded hazardous substances" means a hazardous substance. . . intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title of if such substance, except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label. . .

Title 15 U.S.C. § 1262(b) states that:

> If the [Consumer Product Safety] Commission finds that the requirements of section 1261(p)(1) of this title are not adequate for the protection of the public health and safety in view of the special hazard presented by any particular hazardous substance, it may by regulation establish such reasonable variations or additional label requirements as it finds necessary for the protection of the public health and safety; and any such hazardous substance intended, or packaged in a form

---

[3] Title 15 USC § 1261(f)(1)(a) defines the term "hazardous substances" as "any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children." There does not appear to be any dispute in the instant case that the sewer solvent was a hazardous substance.

[4] Although a state common law claim based on a failure to properly label under the FHSA, it is not automatically preempted, *id.*

suitable, for use in the household or by children, which fails to bear a label in accordance with such regulations shall be deemed to be a misbranded hazardous substance.

■ Thus, a state law claim against a manufacturer is preempted if the product is a "misbranded hazardous substance" under § 1261(p), to the extent that § 1261(p) is supplemented by regulations promulgated by the Consumer Product Safety Commission under the authority of § 1262(b).

A somewhat more expansive definition of the term "misbranded hazardous substance" is provided by 16 CFR § 1500.3(c)(10):

> The definition of "misbranded hazardous substance" in section 2(p) of this act (restated in paragraph (b)(14) of this section) is supplemented by the following definitions or interpretations of terms used therein:
>
> (i) Hazardous substances intended, or packaged in a form suitable, for use in the household means any hazardous substance, whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed. The term includes articles, such as polishes or cleaners, designed primarily for professional use but which are available in retail stores, such as hobby shops, for nonprofessional use. Also included are items, such as antifreeze and radiator cleaners, that although principally for car use may be stored in or around dwelling places. The term does not include industrial supplies that might be taken into a home by a serviceman. An article labeled as, and marketed solely for, industrial use does not become subject to this act because of the possibility that an industrial worker may take a supply for his own use. Size of unit or container is not the only index of whether the article is suitable for use in or around the household; the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling.

The distinction between the definitions provided by 15 U.S.C. § 1262(b) and 16 CFR § 1500.3(c)(10) appears to be crucial, because the sewer solvent does not appear to meet that of the former, but does appear to meet that of the latter.

For example, attached to ABC Compounding's Motion for Summary Judgment is the Affidavit of Steven Walker, President of ABC Compounding, Inc., which incorporates a copy of the label that is on the product Red Hot Sewer Solvent which states: "Store in cool dry place. Keep container closed when not in use. This produce is designed exclusively for industrial and institutional use by trained personnel. This produce is sold as is and the manufacturer makes no warranty, express or implied, of merchantability, fitness for particular purpose of otherwise."

Thus, the sewer solvent would not appear to be, "intended, or packaged in a form suitable, for use in the household or by children," under 15 U.S.C. § 1261(p). But it would be a substance which, "under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell," under 16 CFR §1500.3(c)(10), as demonstrated by its use it this case.

■ The Court finds that the supplementation of the definition of the term "misbranded substance" by 16 CFR § 1500.3(c)(10) is a "reasonable variation" authorized by 15 U.S.C. § 1262(b). Thus, the Court holds that Red Hot Sewer Solvent is subject to regulation under 15 U.S.C. § 1261(p). As a result, Plaintiff's common law claims against ABC Compounding are preempted, and ABC Compounding's Motion for Summary Judgment is granted.

## Discovery Motions

In light of the above, ABC Janitors' Motion for Stay of Discovery and Renewed Motion for Stay of Discovery are denied as moot. The Court does not favor unilateral refusal to participate in discovery, as ABC Janitors appears to have done in this case. However, the Court will deny all other pending discovery motions without prejudice and order the parties to submit a modified stipulated discovery schedule to the Court within thirty (30) days of the date hereof.

## Conclusion

For the reasons set forth above, it is hereby ORDERED as follows:

VIHA's Motion for Partial Summary Judgment is GRANTED with respect to Plaintiff's claimed injuries from slipping and falling on sewage and denied as to Plaintiff's claims for injuries resulting from the inhalation of solvent fumes;

ABC Janitors' Motion to Dismiss and Motion for Rule 60(b) Relief are GRANTED with respect to the issue of the applicability of the Discovery Rule, and DENIED without prejudice pending further discovery on the issue of the applicability of the Relation Back Doctrine.

ABC Janitors' Motion for Stay of Discovery and Renewed Motion for Stay of Discovery are DENIED as moot;

ABC Compounding's Motion for Summary Judgment is GRANTED;

The remaining discovery motions are DENIED without prejudice; and

The parties (other than ABC Compounding) shall submit a modified stipulated discovery schedule to the Court within thirty (30) days of the date hereof.