In re TUTU WELLS CONTAMINATION
LITIGATION.

Rhoda J. HARTHMAN, et al., Plaintiffs,

v.

TEXACO INC., et al, Defendants.

Civil Action No. 1989–220.

District Court, Virgin Islands,
D. St. Thomas and St. John.

Dec. 20, 1995.

**982**

Richard R. Knoepfel, Briggs, Knoepfel & Ronca, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, and Jeffrey T. Eddy, Joseph B. Cox, Jr., James M. Hughes, Charles W. Patrick, Jr., Frederick J. Jekel, Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, and Thomas Alkon, Gordon Rhea, Thomas H. Hart, III, Alkon, Rhea & Hart, Christiansted, St. Croix, U.S. Virgin Islands, for PID–Harthmans.

Robert T. Lehman, Debra Rosen, William J. O'Kane, Christopher Gibson, Archer & Greiner, Haddonfield, New Jersey, and Douglas L. Capdeville, Christiansted, St. Croix, VI, for Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc., and Esso Standard Oil, Co. (P.R.).

Richard E. Daley, Law Offices of Pattie & Daley, Christiansted, St. Croix, U.S. Virgin Islands, and Kell S. Damsgaard, Terri Jacobsen, Morgan, Lewis & Bockius, Philadelphia, PA, and William Stack, Houston, Texas, for Exxon Corporation.

Francis E. Jackson, Jr., Jacqueline Drew, 8A & B Bjerge Gade, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Daniel Bayard.

John Newman, Diane Siana, Porzio, Bromberg & Newman, P.C., Morristown, New Jersey, and Kevin A. Rames, Christiansted, St. Croix, U.S. Virgin Islands, for Paul Lazare, Andreas Gal, The Duplan Corp., Laga Industries, Ltd., Panes Industries Inc. and Panex Co.

## OPINION

BROTMAN, District Judge, Sitting by Designation.

Presently before this court is the Motion of Defendant Exxon ("Exxon") For Summary Judgment Based on the Statute of Limitations.[1] For the reasons set forth below, the court must deny this motion.

### I. Factual and Procedural Background

Most of the underlying facts of this litigation were set forth in an Opinion dated August 13, 1993, published at 846 F.Supp. 1243 (D.V.I.1993) and supplemented in the Opinion of August 11, 1994, published at 157 F.R.D. 367 (D.V.I.1994). Familiarity with the underlying facts is therefore presumed. In addition to this motion, the Esso Defendants[2] and Exxon filed several other motions for summary judgment[3] each attacking a narrow issue of the Plaintiffs' case. Given the importance of each of the issues raised, the court notes for the convenience of the reader that it addresses each motion separately.

For the purposes of this motion, a brief procedural history of the Plaintiffs' filings is necessary. As previously determined by this court and discussed below, the Plaintiffs injury in this action accrued in July of 1987, when the DPNR and the United States Environmental Protection Agency began an investigation into alleged contamination of the Turpentine Run Aquifer. On July 6, 1989, the PID filed its original Complaint in this action, naming five defendants, including

---

**1.** Although the Laga Defendants originally joined this motion, their subsequent settlement agreement with the Plaintiffs obviates the need for the court to address the merits of this motion with respect to them.

**2.** The "Esso Defendants" are Esso Standard Oil S.A. Ltd., Esso Virgin Islands, Inc. and Esso Standard Oil Co. (Puerto Rico).

**3.** In addition to this motion, one or more of these parties has filed a summary judgment motion raising the following issues: (1) damages, (2) liability, (3) failure to pierce the corporate veil and (4) assumption of the risk.

Esso Standard Oil S.A. Ltd., a subsidiary of Exxon. The Complaint included claims for negligence, trespass, nuisance and strict liability. Subsequent amendments to the Complaint added the Harthmans, Tutu Park, and Water Services as Plaintiffs. On March 2, 1992, the Plaintiffs filed their Fourth Amended Complaint which, for the first time, added Exxon as a defendant.

In response to Exxon's motion to dismiss based on the expiration of the statute of limitations, this court declines at that time to decide whether Plaintiffs' claims were time-barred. At the close of discovery in this matter, Exxon filed its instant motion requesting that the court enter summary judgment in its favor because the applicable statute of limitations expired prior to the time that it was joined as a defendant in this matter.

## II. The Law

### A. Summary Judgment Standard

The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983) *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1987). Significantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. at 2510. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *id.* at 249, 106 S.Ct. at 2510; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355; *see also, Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991), *cert denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements."); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment").

A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Whether a fact is "material" is determined by the substantive law defining the claims. *Id.* at 248, 106 S.Ct. at 2510; *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989). The Supreme

Court observed that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." *Id.; see also, Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981) (role of district court is to determine whether genuine issue of material fact exists). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir.1990) *cert. denied*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

Although the summary judgment hurdle is a difficult one to meet, it is by no means insurmountable. "Where the evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact" this Court will grant summary judgment. *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 763 F.2d 1482, 1489 (3d Cir.1985). Accordingly, in Celotex, the Supreme Court concluded that "[o]ne of the principal purposes of the summary judgment rule is to

isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323–324, 106 S.Ct. at 2553.

## B. The Statute of Limitations

■ In a prior opinion, this court held that the applicable statute of limitations for the Plaintiffs' claims is the two year limitation set forth in § 31(5)(A) of Title 5 of the Virgin Islands Code. *In re Tutu Wells Contamination Litigation*, 846 F.Supp. 1243, 1253–54 (D.V.I.1993); 5 V.I.C. § 31(5)(A). In order to determine whether the Plaintiffs' claims against Exxon are time-barred by that statute, the court must determine when their claims began to accrue. Under the law of the Virgin Islands, the court must apply both the Discovery Rule and the Continuing Torts Doctrine in making this determination.[4] *Id.* at 1254–55. Applying each of these rules individually, a plaintiff's claim begins to accrue at the latest time provided by either rule.

### 1. Environmental Discovery Rule

■ As the Third Circuit Court of Appeals has established, the law of the Virgin Islands has in certain circumstances incorporated the Discovery Rule to delay the running of a statute of limitations. *See, e.g., Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir.1989). Although the court is not aware of any other environmental contamination case in the Virgin Islands which has applied the rule, the court does not hesitate to do so now.[5] *Cf.,*

---

**4.** In addition, the Plaintiffs argue that their claims against Exxon are not time-barred because under Federal Rule of Civil Procedure 15(c), the claims relate back to the original filing of their complaint which was within the two year statute of limitations period. As Exxon correctly asserts, however, Rule 15(c) is inapplicable here because the Plaintiffs have not demonstrated that there was a "mistake concerning the identity of [Exxon as] the proper party." Fed.R.Civ.P. 15(c). In fact, the Plaintiffs appear to argue that the mistaken identity element of Rule 15(c) has been met because Exxon is a related corporate entity with respect to the other named Esso Defendants. *See*, Memorandum in Response to Defendants' Motions for Summary Judgment and Exclusion of Expert Witnesses' Expert at 43. Consistent with the approach taken by other

courts in this circuit, the court must reject this argument. *See e.g., Larry v. Penn Truck Aids, Inc.*, 94 F.R.D. 708, 721 (E.D.Pa.1982) (relation back inapplicable where plaintiffs knew that original defendant and potential new defendant "were distinct, albeit related, legal entities" when filing the original complaint). Thus, the court must also reject the Plaintiffs argument that its claims against Exxon are timely under Rule 15(c) because the Plaintiffs have failed to meet the mistaken identity element of that Rule.

**5.** Because the application of the discovery rule to environmental cases was not challenged by the parties, the court will not go into unnecessary legal detail in justifying its use of this rule. Nevertheless, the court notes that common law

*Piccolini v. Simon's Wrecking,* 686 F.Supp. 1063 (M.D.Pa.1988) (applying the discovery rule in an environmental contamination case). In its classic form, the discovery rule operates to prevent the relevant statute of limitations, here the two year statute of limitations, from beginning to run. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Van Buskirk v. Carey Canadian Mines,* 760 F.2d 481 (3d Cir.1985); *Ciccarelli v. Carey Canadian Mines,* 757 F.2d 548 (3d Cir.1985); *see generally,* Susan M. Cooke, The Law of Hazardous Waste: Management, Cleanup Liability and Litigation, § 17.05[4][6], p 17–254 (hereafter "The Law of Hazardous Waste"). Under the rule, the statute of limitations will start to run at the time that two conditions are satisfied: (1) when the plaintiff knew or should have known that he had suffered a harm *and* (2) when the plaintiff knew or should have known the cause of his injury. Contrary to the assertions of the Plaintiffs, both of these determinations are made using an objective, reasonable person standard. *Joseph,* 867 F.2d at 184.

In this case, the court's prior opinion established that the Plaintiffs knew or should have known that they had suffered a harm on or about July 7, 1987. *In re Tutu,* 846 F.Supp. at 1249. Upon review of the various summary judgment submissions, no party appears to challenge this finding of the court. Nevertheless, in considering the present motions, the court has had the opportunity to revisit the extensive record in this case and reconsider this finding with respect to only the PID/Harthman Plaintiffs[6]. Having done so, the court finds that these Plaintiffs knew or should have known that they had suffered a harm on or about July 7, 1987 when they became aware of the contamination to the Tillet Well and consequently of the entire Turpentine Run Aquifer which underlies both the Tillet Well and the PID/Harthman property. Further, the court finds that it is appropriate to make this finding as a matter

of law because no reasonable person could differ with such a finding upon review of the entire record of this case.

■ In addition to showing when the Plaintiffs knew or should have known of their injury, the Plaintiffs must show when they knew or should have known of the cause of that injury. In its prior opinion, this court held that this second requirement of the discovery rule is satisfied when a plaintiff knows or should know of the "identity of the actor or actors whose conduct may be responsible for the injury sustained." *In re Tutu,* 846 F.Supp. at 1258. Contrary to this holding, Exxon argues that under Third Circuit precedent, the second element of the discovery rule requires only that the plaintiff knows that "someone" caused his injury but *not* that he knows the actual identity of that "someone." In essence, Exxon argues that this court should vacate that portion in its earlier opinion because it fails to comply with Third Circuit precedent.

Because of the importance of such an assertion and in light of the general importance of its prior holding, the court will now reiterate that holding and in doing so lay a more proper foundation for it. In support of their argument, Exxon relies primarily on the Third Circuit's holding in *Zeleznik v. United States,* 770 F.2d 20 (3d Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986). In *Zeleznik,* an illegal alien killed the plaintiffs' son in 1974. *Zeleznik,* 770 F.2d at 21. In 1982, plaintiffs discovered for the first time that a few days prior to the murder of their son, the illegal alien had attempted to surrender himself to the Immigration and Naturalization Service (the "INS"). However, the INS had allowed the illegal alien to go free—an act which the plaintiffs asserted negligently caused the death of their son. *Id.* Thus, in 1983, nine years after the murder, the plaintiffs brought

claims premised on environmental contamination warrant the application of the discovery rule under the factors articulated in *Hill v. Government Employees Retirement System,* 1991 WL 520420 (D.V.I.1991) *citing, Kuwait Airways Corporation v. American Security Bank, N.A.,* 890 F.2d 456 (D.C.Cir.1989).

6. In this consolidated action, there were two distinct sets of plaintiffs: the Four Winds Plaintiffs (Civil Action No. 1989–224) and the PID/Harthman Plaintiffs (Civil Action No. 1989–220).

a negligence claim against the INS. *Id.* at 22.

As Exxon correctly points out, the dispositive issue in *Zeleznik* is similar to the one currently before this court. There, the INS argued that plaintiffs' claim was barred by the two year statute of limitations because the claim accrued in 1974 upon the death of plaintiffs' son. *Id.* at 22. In contrast, the *Zeleznik* plaintiffs argued that their claim did not accrue under the discovery rule until 1982, when they discovered that the INS was a proper defendant. *Id.* at 23. Ultimately, the Third Circuit rejected the *Zeleznik* plaintiffs' argument and held that their claim against the INS was barred by the statute of limitations. *Id.* at 24. Specifically, the court stated:

> [T]he statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress.... Once the injured party is put on notice, the burden is him · to determine within the limitations period whether any party may be liable to him.

*Id.* at 23. Thus, Exxon argues that *Zeleznik* requires this court to find that the Plaintiffs' common law claims are barred.

Despite the superficial force of Exxon's argument, the court finds that the Third Circuit's holding in *Zeleznik* is not dispositive of this case. The Court's holding in *Zeleznik* relied on the Supreme Court's holding in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick* as in *Zeleznik*, the plaintiffs' tort claims were asserted against the federal government under the Federal Tort Claims Act. *Kubrick*, 444 U.S. at 115, 100 S.Ct. at 355; *Zeleznik*, 770 F.2d at 21. Further, two additional similarities are critical for this discussion. First, *Kubrick* and *Zeleznik*, as well as all cases arising under the Federal Torts Claim Act, involve the application of *federal common*

*law* rather than state law. Second, both the Supreme Court's holding in *Kubrick* and the Third Circuit's holding in *Zeleznik* are premised primarily on the Supreme Court's policy of narrowly construing exceptions to sovereign immunity. *Kubrick*, 444 U.S. at 117–19, 100 S.Ct. at 356–57; *Zeleznik*, 770 F.2d at 24; *see also, Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988) (recognizing that the Supreme Court's holding in *Kubrick* rested on sovereign immunity concerns). Because none of these factors are present in this case, the court finds that *Kubrick* and *Zeleznik* do not control this court's decision in this case.[7]

Having distinguished the rule established in *Kubrick* and *Zeleznik*, the court will apply the "Environmental Discovery Rule" set forth as its original holding on this issue. *In re Tutu*, 846 F.Supp. at 1258. Under that rule, in Virgin Islands' common law tort claims premised on environmental contamination, the environmental discovery rule will prevent the applicable statute of limitations from beginning to run until the plaintiff knew or should have known through the exercise of reasonable diligence sufficient critical facts to put him on notice that (1) he has been injured and (2) the actions or inactions of a particular party could have been a cause of that injury.

In adopting such an arguably broad Environmental Discovery Rule, the court acknowledges that it adopts what may be a minority interpretation of the traditional discovery rule. However, the court finds that such a rule is dictated in the relatively limited context of environmental torts for several reasons. First, our society has recently come to recognize that if our environment is to survive, it must be protected from those who would otherwise abuse or destroy it. This recognition can be illustrated by reference to our laws, through the rise of statutes and regulations aimed at protecting the environmental, as well as in society generally. Although the legislature enacted the relevant statute of limitations, in doing so, it left to the courts task of determining when a plain-

---

7. The court notes that it is not alone in declining to follow the *Kubrick* rule in cases arising under state law. *See generally*, Calvin W. Corman, Limitations of Actions § 11.1.4, at 145–154 n. 35 (1991); *Anderson v. W.R. Grace Co.*, 628 F.Supp. 1219, 1223 (D.Mass.1986); *Louisiana–Pacific Corp. v. ASARCO Inc.*, 13 F.3d 1378, 1379 (9th Cir.1994); *Cathcart v. Keene Ind. Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984).

tiff's claim would begin to "accrue" under that statute. This court sees no reason why that determination should not reflect advances in our society—surely the legislature could have intended nor expect anything less. Further, it is entirely fitting that such a law should apply in the Virgin Islands where the environment is such an integral part of both the lives of the citizens and the economy. Second, the various harms and injuries arising from environmental contaminants are often slow to arise given the latent nature of many such contaminants. Understandably, this delay creates difficulties in determining the actor responsible for any harm resulting from those contaminants. In addition, limitations in scientific capabilities often hinders a determination of who may have caused specific contamination. The Law of Hazardous Waste, § 17.02[2][b], at 17–101 n. 14. For example, it could take environmental experts longer than two years to conduct a thorough investigation into possible sources of contamination if presented with a large contamination zone or several possible contamination pathways. In conjunction with the relatively short period of time allowed under the applicable statute of limitations, such limitations prevent environmental polluters from having to live up to their responsibilities. Faced with such limitations and a short period under a statute of limitations, victims of environmental contamination would otherwise be forced to burden the judicial system by bringing suit against every party who could even conceivably be responsible for contamination. *See, Pennwalt Corp. v. Nasios,* 550 A.2d 1155, 1167 (Md.App. 1988). Finally, a broad environmental discovery rule avoids the possibility of under-deterring conduct which results in environmental contamination. *See generally,* Developments in the Law—Toxic Waste Litigation, 99 Harv.L.Rev. 1458, 1602–09 (1986) (hereafter "Developments").

Nevertheless, policy factors weigh against applying this rule against each party who is implicated in an environmental contamination case. First, a primary role of a statute of limitations is to protect the defendant from claims in which "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). Second, statutes of limitations allow defendants to plan their affairs without the threat of a sudden re-emergence of ancient claims. Thus, in applying the rule announced in this case, future courts must strive to balance the competing policies which both support and oppose its application on a party by party basis. Developments, 99 Harv.L.Rev. at 166.

■ Applying the Environmental Discovery Rule to Exxon, the court finds that the Plaintiffs' claims are time barred because this case presents one of the exceptions to the application of this rule. Although the Plaintiffs argue that their claims against Exxon arise from Exxon's environmental policies, the court can not lose sight of the fact that the Plaintiffs' claims against Exxon are premised exclusively on a theory of piercing of the corporate veil. In balancing the factors articulated earlier in this opinion, the court finds that such a theory of liability is not enough to invoke the application of the broad Environmental Discovery Rule. The latent nature of any contamination or any scientific limitations in tracing the cause of the contamination to a subsidiary of Exxon does not explain why the Plaintiffs could not have identified Exxon through diligent investigation within the two year limitations period after having identified that subsidiary. Although the Plaintiffs assert that the environmental policies of Exxon form a basis for allowing the court to pierce the corporate veil, the court must logically regard such policies merely as one of the factors which a court must weigh in determining whether to pierce the corporate veil. While the court will apply the environmental discovery rule against alleged environmental contaminators, it will not apply the rule haphazardly against the parent corporations of such parties where the sole basis for liability arises from piercing the corporate veil.[8] Thus, the court finds that, at the latest, the two year statute of

---

8. Significantly, the Plaintiffs have not argued that Exxon is a responsible party in its own right because of actions it may have taken in concert with one or more of its subsidiaries which may have caused environmental contamination.

limitations began to accrue against Exxon when the Plaintiffs brought a suit against one of Exxon's subsidiaries. Because the Plaintiffs filed suit against ESSOSA, one of Exxon's subsidiaries, on July 6, 1989, the two year statute of limitations expired with respect to Exxon on July 6, 1991—nearly a full year before the Plaintiffs brought its current suit against Exxon.

### 2. Continuing Tort Doctrine

Application of the Environmental Discovery Rule does not dispose of the statute of limitations inquiry because the Continuing Torts Doctrine must also be evaluated to determine whether the two year statute of limitations applicable to the Plaintiffs' claims has expired. The Virgin Islands adopted the Continuing Tort Doctrine in *Rodgers v. Ibec Housing Co.*, 12 V.I. 166 (1975). Unfortunately, the court has been unable to find any one source which clearly outlines the operation of this doctrine. Possibly as a result of this paucity of authority, the submissions of the parties exhibit a fundamental misunderstanding of the Continuing Tort Doctrine with respect to environmental contamination claims. For both of these reasons, the court will now turn to the explanation of the operation of this doctrine.

One commentator has succinctly and accurately summarized the Continuing Tort Doctrine as follows:

> A continuing tort is, in essence, a succession of recurring torts that result in damages that are recoverable each time they occur. In theory, each instance of damage should give rise to a new claim and, thus, a new date of accrual for the statute of limitations. If the recurring injuries result in permanent rather than temporary damages, however, all damages—whether past, present or future—must be recovered in a single action. The result is that actions for temporary damages arising from recurrent emissions or migration of pollutants will accrue continuously, while actions for permanent damages may accrue long before the plaintiff commences suit. In such cases, therefore, it is critical to ascertain whether the injury is permanent or temporary.

The Law of Hazardous Waste § 17.05[4][c], at 17–260.

■ As suggested by this summary and as contemplated by the relevant provisions of the Restatement, the court must make three critical inquiries in applying the Continuing Tort Doctrine for the purposes of a summary judgment motion. First, the court must determine whether the allegedly tortious conduct giving rise to the plaintiff's harm is recurring. *Miller v. Cudahy Co.*, 858 F.2d 1449, 1455 (10th Cir.1988) *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *In re Tutu*, 846 F.Supp. at 1255. If so, the court must determine whether the resulting injury from that tort is temporary or permanent. If the injuries are permanent in nature, the court must determine when the plaintiff knew or could have known of the critical facts indicating that the injuries were likely to be permanent.

#### a. The Recurring Nature of the Tort

■ This case arises as a result of contamination of the Turpentine Run Aquifer; thus, for the purposes of this doctrine, the issue is whether any tortious conduct by Exxon resulting in contamination is continuing. In arguing against application of this doctrine, Exxon asserts that the apparent removal of two oil tanks from the nearby Esso property stopped the continuing or recurring nature of any tort it may have committed. Rather than rely on affidavits to support its allegations, however, Exxon cites only to an expert report which suggests that two oil tanks were removed from the property in August 1989. Nevertheless, assuming the veracity of the report, Exxon has failed to establish that *all* oil tanks which could be continuing to release contaminants have been removed from the property. Significantly, Exxon does not argue or point to any evidence to suggest that all conduct leading to release of contaminants from the property has ceased. In addition to allegations concerning leaking oil tanks, the Plaintiffs' Fourth Amended Complaint alleges that other actions of Exxon may have resulted in contamination of the aquifer, Fourth Amended Complaint at ¶ 44, including the improper storage of other pe-

troleum related contaminants on their premises, *Id.* at ¶¶ 40 and 42, and the improper disposal of various waste oils. *Id.* at ¶ 58. Because Exxon has not established that all of the oil tanks have been removed from the Esso property and has not challenged the Plaintiffs' other allegations relating to possible ongoing leakage resulting in contamination of the aquifer, the court finds that a material fact exists as to whether any tortious conduct by Exxon is recurring for the purposes of the Continuing Torts Doctrine.[9]

#### b. Temporary versus Permanent Injuries

■ For the reasons outlined below, the court's inquiry does not end with a determination that Exxon's alleged tortious conduct may be recurring; thus, the court must turn to an analysis of the nature of the injuries allegedly suffered by the Plaintiffs. As outlined earlier in this opinion, for the purposes of this doctrine, the injuries fall into two categories: temporary injuries and permanent injuries. The essence of a temporary injury is that the injury resulting from the recurring tortious conduct is remediable or transient in nature such that it may be abated when that conduct giving rise to the injury ceases. The Law of Hazardous Waste § 17.05[4][c], at 17–261 n. 55; *Miller,* 858 F.2d at 1453–56; *Cutchin v. S. Carolina Dept. of Highways and Public Transportation,* 301 S.C. 35, 389 S.E.2d 646, 648 (1990); *Walton v. City of Bozeman,* 179 Mont. 351, 588 P.2d 518, 521 (1978); *Haugen Trust v. Walker,* 204 Mont. 508, 665 P.2d 1132, 1135 (injuries are temporary where cause of injury is abatable and injuries stemming therefrom are not permanent in nature). Where a plaintiff suffers temporary injuries, the statute of limitations does not begin to accrue. Restatement (Second) of Torts, § 899, comment d. Thus, the actor will continue to be liable for injuries without having the benefit of the protections usually afforded by such a statute. However, under the weight of judi-

cial authority, the plaintiff will ordinarily be limited to only those past temporary injuries which have occurred within the applicable statute of limitations period immediately before the plaintiff filed his suit. *See, e.g., Walton,* 588 P.2d at 521; *Sundell v. Town of New London,* 119 N.H. 839, 409 A.2d 1315, 1320 (1979). By allowing the plaintiff to inflict the continuing burden of successive actions against the defendant, the identification and designation of temporary injuries resulting from on-going tortious conduct creates a powerful incentive for the defendant to cease that conduct. *Cf., Miller,* 858 F.2d at 1454 (The continuing torts doctrine is predicated upon "the defendant's ability and duty to abate the existing conditions which constitute the nuisance").

■ Despite this incentive to cease engaging in tortious conduct which results in temporary injuries, however, under certain circumstances the cost of compensating the plaintiff for his temporary injuries may not outweigh the benefits to the contaminating party of continuing to engage in that conduct. If a court were unwilling to enjoin that conduct, requiring a plaintiff to bring recurring suits for past damages would be unnecessarily burdensome on both the plaintiff as well as the judicial system. The Restatement addresses this potential shortcoming by providing that "when it appears that the wrong will probably continue indefinitely, the person injured is empowered to elect to be compensated once and for all, for the prospective invasions." Restatement (Second) of Torts § 930, comment b. Further, the plaintiff may make this election at trial. *Id.* As the Restatement provides, however, the defendant can avoid having the court compensate the plaintiff for all prospective invasions by showing that "he has remediated *the cause of harm* or is about to do so, and if the fact is so found, the plaintiff will be confined to dam-

---

9. Significantly, the Plaintiffs' Fourth Amended Complaint does not allege that Exxon or any other defendant was negligent in failing to take corrective or remedial measures with respect to its property once any leakage was discovered. In its proposed Fifth Amended Complaint, the Plaintiffs attempted to add this additional basis for liability, but the court denied their request.

*See, In re Tutu Wells Contamination,* Master Docket No. 1989–107 (D.V.I. signed Nov. 21, 1995). Thus, for the purposes of determining the continuing nature of any tortious conduct, the inquiry at trial must focus on the release of contaminants into the environment and *not* on any failure to remove such contaminants from the environment once a release was discovered.

ages for past invasions." *Id.* (emphasis added)

▬▬▬ Unfortunately, the Restatement does not explicitly or clearly delineate when the statute of limitations begins to run when a plaintiff seeks prospective recovery for temporary injuries which will recur for an indefinite period.[10] However, because the Restatement contemplates that the plaintiff may elect to seek prospective recovery at the time of trial and that the defendant may dispute the indefinite quality of the harm at trial, *id.*, the only workable conclusion is that claims seeking damages for temporary injuries will not accrue even where the plaintiff elects prospective relief. Thus, this court finds that so long as the injuries resulting from a recurring tort are temporary, the statute of limitations will not begin to run regardless of the measure of damages sought by the plaintiff.[11]

▬▬▬ In contrast to temporary injuries, even those resulting from tortious conduct which will continue to occur indefinitely, a permanent injury arises when the harm resulting from the recurring tortious conduct will impact the injured party regardless of whether that conduct ceases—that is, the harm is not abatable, temporary or remediable. *Miller,* 858 F.2d at 1454; *Sundell,* 409 A.2d at 1320–21. Where permanent injuries result from a recurring tort, the statute of limitations begins to accrue when the plaintiff knew or should have known of the critical facts putting him on notice of the permanent nature of his injuries.[12]

▬▬▬ When permanent injuries result, the fact that a party may be continuing his tortious conduct becomes immaterial because the injury that has occurred will never abate upon cessation of the conduct. Thus, the statute of limitations should begin to run as to the continuing nature of the tortious conduct.[13] Unlike temporary injuries, requiring or allowing a plaintiff to bring successive suits for recurring permanent injuries is nonsensical. Where permanent injuries result from recurring tortious conduct, a single suit for damages fully compensates the victim; thus, there is no need for successive suits.

▬▬▬ Applying these principles here, the court is unable to determine on the record before it whether the injuries resulting from the alleged continuing tortious conduct of

---

10. A review of relevant caselaw was equally unhelpful. In fact, several cases broadly define "permanent injuries" as arising either (1) where the *cause* of a temporary injury appears to be indefinite in duration or (2) where the injuries themselves are irremediable regardless of the continuing nature of the tortious conduct. *See e.g., Miller,* 858 F.2d at 1453–54; *Sundell,* 409 A.2d at 1320–21. Under such a broad definition, the relevant statute of limitations would begin to run even where temporary injuries are resulting from tortious conduct which may continue indefinitely. As indicated in the body of this opinion, this court declines to include the former category in its definition of permanent injuries for the purposes of determining the running of the statute of limitations. The Restatement contemplates plainly that a plaintiff may—but need not—elect to seek prospective recovery at the time of trial when faced with temporary injuries resulting from tortious conduct of indefinite duration. If the former category of "permanent injuries" were to begin the running of the statute of limitations, the court would face the unfortunately quandary of determining whether the statute had run at the time of trial and if it had, merely allowing the plaintiff to seek temporary injuries for the injuries sustained and filing successive, burdensome actions seeking similar relief. For this reason, the court will define temporary and permanent injuries with respect to the quality of the harm resulting from the possibly recurring tortious conduct.

11. The measure of damages for temporary injuries differs depending upon whether the plaintiff seeks recovery of only past damages or prospective damages. Where the plaintiff seeks damages for past injuries, his damages will ordinarily be measured by the loss of the value of the use or the loss of rental value of the property for the period during which the temporary injury lasts. Restatement (Second) of Torts § 930, comment b. In contrast, where the plaintiff seeks prospective damages for temporary injuries the cause of which will continue "indefinitely," his damages will ordinarily be measured by the amount of depreciation in the salable value of the land. *Id.*

12. As outlined in a previous section of this opinion, the court would apply the Environmental Discovery Rule in environmental cases when permanent injuries result from recurring tortious conduct.

13. As suggested earlier in this opinion, where a permanent injury has resulted from otherwise continuing tortious conduct, the recurring nature of the tortious conduct would not ordinarily raise a genuine issue of material fact.

Exxon are temporary, indefinitely recurring or otherwise, or permanent in nature. In fact, Exxon argued against application of the Continuing Tort Doctrine only in its reply memorandum. And in so doing, Exxon did not assert any arguments with respect to the continuing nature of any injuries resulting from any continuing tortious conduct. Thus, a genuine issue of material fact exists which prevents the entry of summary judgment in favor of Exxon.

## III. Conclusion

For the reasons set forth above, the court must deny the Motion of Defendant Exxon For Summary Judgment Based on the Statute of Limitations.